723 A.2d 1

**WEST AMERICAN INSURANCE COMPANY**

v.

**John POPA, et al.**

**No. 28, Sept. Term, 1996.**

Court of Appeals of Maryland.

Dec. 22, 1998.

Reconsideration Denied Feb. 5, 1999.

George M. Church (Francis V. Kenneally, Church & Houff, P.A., on brief), Baltimore, for petitioner.

Marc Seldin Rosen (Colleen A. Cavanaugh, Scanlan & Rosen, P.A., on brief), Baltimore, for respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI *, RAKER and ROBERT C. MURPHY (Retired, specially assigned), JJ.

ELDRIDGE, Judge.

This case presents several issues arising under the uninsured motorist provisions contained in a policy of automobile insurance sold in Maryland.

## I.

On July 1, 1991, Jonathan David Popa was operating an automobile which was stopped below the crest of a hill on U.S. Route 1 in Cecil County, Maryland. His vehicle was struck by a Maryland State Police car driven by Trooper Rodney Manuel, resulting in Jonathan's death. The car which Jonathan was operating at the time was owned by his parents and insured under a policy issued by West American Insurance Company. The policy contained uninsured and underinsured motorist coverage in the amount of $300,000.

On July 1, 1992, Jonathan's parents, John and Tommie Sue Popa, individually and as personal representatives of Jonathan's estate, filed suit in the Circuit Court for Cecil County against Trooper Manuel, the Maryland State Police and the State of Maryland, asserting wrongful death and survival claims. Trooper Manuel subsequently filed a separate suit in the Circuit Court for Cecil County against Jonathan's estate for his personal injuries arising out of the accident. The Popas promptly notified West American of both lawsuits, and West American retained counsel to defend Jonathan's estate in the action filed by Trooper Manuel. West American did not at that time seek to intervene in the action filed by the Popas.

The two cases were consolidated, and a jury trial was held from January 24 through January 27, 1994. During the first

---

* Karwacki, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

day of the trial, the counsel retained by West American settled Trooper Manuel's suit against Jonathan's estate. The trial continued on the Popas' wrongful death and survival claims, and the jury returned a verdict finding that Trooper Manuel was negligent and that Jonathan was not contributorily negligent. The jury awarded a total of $867,000 in damages. Judgment was entered in that amount against the State of Maryland only on January 31, 1994. By letter dated February 7, 1994, the Popas made a claim for underinsured motorist benefits under the policy issued by West American, seeking the full amount of their coverage less any amount paid by the State.

Meanwhile, the State filed a motion pursuant to Maryland Rule 2–535 to reduce the judgment to $50,000 because state law at the time limited the State's liability under the Maryland Tort Claims Act, Maryland Code (1984, 1993 Repl.Vol.), § 12–101 *et seq.* of the State Government Article, to $50,000. The circuit court denied the State's motion on March 3, 1994, but did file an order prohibiting the Popas from executing on the judgment against the State for any amount in excess of $50,000.

Four days later, on March 7, 1994, West American filed a motion to intervene and a motion for reconsideration of the court's March 3, 1994, order. Prior to a hearing on these motions, the State tendered payment of $50,000; the Popas accepted this payment and filed an order of satisfaction. On May 12, 1994, after a hearing, the court denied both of West American's motions. West American took no appeal from the May 12th order of the Circuit Court for Cecil County.

In the interim, the Popas filed in the Circuit Court for Baltimore County the present breach of contract action, seeking underinsured motorist benefits under the West American policy. Both sides filed motions for summary judgment. After a hearing, the circuit court on January 18, 1995, denied West American's motion, granted the Popas' motion, and entered judgment in their favor for $250,000.

West American appealed from the judgment of the Circuit Court for Baltimore County, and the Court of Special Appeals affirmed. *West American Ins. Co. v. Popa*, 108 Md.App. 73, 670 A.2d 1021 (1996). West American then filed a petition for a writ of certiorari which this Court granted. *West American Insurance v. Popa*, 342 Md. 391, 676 A.2d 79 (1996). The questions presented by West American in its petition for a writ of certiorari are as follows:

"1. Under the circumstances that existed at the time of the underlying tort trial, was mere knowledge by West American that the tort suit was pending sufficient to satisfy due process notice requirements?

"2. Are the Popas legally entitled to recover benefits from the State of Maryland?

"(a) Did the filing of an Order of Satisfaction to the judgment entered in the underlying tort case against the State of Maryland extinguish the Popas' entitlement to further recovery and thereby bar their claim for underinsured motorist benefits against West American?

"(b) Did the State's sovereign immunity for all amounts greater than $50,000 preclude the Popas from being legally entitled to recover any additional benefits from the State and if so, is their claim for underinsured motorist benefits against West American likewise barred?

"3. If the West American policy exceptions excluding coverage for self-insured or government owned vehicles are void, are they only void to the extent of the $20,000/$40,000 statutory limits?"

We will address each of these issues in turn.

## II.

■ Although West American acknowledges that it "knew about the Popas' suit against Trooper Manuel and the State," it contends that "[m]ere knowledge of an underlying suit is not enough" to "satisfy due process notice requirements." (Petitioner's brief at 6). West American argues that "due process notice requirements" mandate that the insurer know that an

uninsured motorist claim will be made or "have a reasonable belief" that such a claim will be made in order for the insurer to be bound by the outcome of the underlying tort action. (*Ibid.*). West American cites no authority for its position.

In *Nationwide Mutual Ins. v. Webb,* 291 Md. 721, 749 n. 12, 436 A.2d 465, 481 n. 12 (1981), this Court, citing cases from other jurisdictions, stated: "[A]lthough no pertinent policy clause in this case required notice to the [uninsured motorist] insurer of the tort action, considerations of due process do require such notice in order for an [uninsured motorist] insurer to be bound by the outcome of the tort action." We went on in the *Webb* opinion to reject the uninsured motorist insurer's argument that the insured was required to send to his uninsured motorist insurer the pleadings in the underlying tort case, saying: "We are aware of no authority, however, supporting the position that the pleadings in the tort case must be forwarded to the insurer." *Ibid.* We also pointed out that it has been held that the notice "requirement 'does not become operative until an insured reasonably believes he has an uninsured motorist claim.'" *Ibid.* The Court concluded in *Webb* that, because a notice of the tort suit was sent to the uninsured motorist insurer four months before the trial of the tort case, "[i]t would certainly seem that such notice was sufficient to meet due process requirements." *Ibid.*

Nothing in *Webb* or any other case, to the best of our knowledge, suggests that due process requires that the uninsured or underinsured motorist carrier be told or have a reasonable belief, before the trial of the tort case, that an uninsured or underinsured motorist claim will be made. Instead, the *Webb* opinion stands for the proposition that if the uninsured/underinsured motorist carrier has notice of the underlying tort suit and an opportunity to intervene, due process requirements are satisfied, and the carrier is ordinarily bound by the determinations made in the tort case. Other cases are to the same effect. *See, e.g., Champion Ins. Co. v. Denney,* 555 So.2d 137, 139–140 (Ala.1989) ("An insurer, however, should not be bound by such a judgment unless it had full notice and adequate opportunity to intervene"); *Briggs v.*

*American Family Mut. Ins. Co.*, 833 P.2d 859, 864 (Colo.App. 1992) ("if an insurer has been given adequate notice of the proceeding and an opportunity to protect its interests it will it be bound by a judgment against the uninsured motorist"); *State Farm Mut. Auto. Ins. Co. v. Glover*, 113 Ga.App. 815, 820–821, 149 S.E.2d 852, 856 (1966); *Vernon Fire and Casualty Ins. Co. v. Matney*, 170 Ind.App. 45, 49–50, 351 N.E.2d 60, 63–64 (1976); *Guillan v. Watts*, 249 Kan. 606, 617, 822 P.2d 582, 590 (1991) ("Once the insured has notified his insurer and the insurer elects not to intervene and become a party to the action, the insurer is bound by the judgment"); *Wells v. Hartford Accident and Indemnity Co.*, 459 S.W.2d 253, 259 (Mo.1970) ("an uninsured motorist carrier is estopped to relitigate the issues necessarily decided in an action brought by its insured against an uninsured motorist, if the uninsured motorist carrier has been given full and adequate notice and an opportunity to intervene and defend when the insured litigates the issues of liability and damages with the uninsured motorist tort-feasor"); *Heisner v. Jones*, 184 Neb. 602, 611, 169 N.W.2d 606, 612 (1969); *Burge v. Mid–Continent Casualty Co.*, 123 N.M. 1, 4–5, 933 P.2d 210, 213–214 (1996) (collecting cases).[1]

 Under the Maryland uninsured/underinsured motorist statutory provisions, when an insured under an automobile insurance policy has incurred damages as a result of the allegedly tortious driving by an uninsured or underinsured motorist, the insured has the option of initially bringing a contract action against his or her insurer to recover under the

---

1. In fact, the principle set forth in these cases is reflected in the language of the insurance policy issued to the Popas by West American. The uninsured/underinsured motorist section of West American's policy states:

"No judgment for damages arising out of a suit brought against the owner or operator of an uninsured motor vehicle is binding on us unless we:

 1. Received reasonable notice of the pendency of the suit resulting in the judgment; and

 2. Had a reasonable opportunity to protect our interests in the suit."

The policy provision does not require that West American also be notified that an uninsured or underinsured motorist claim will be made.

policy's uninsured/underinsured motorist provisions or of initially bringing a tort action against the tortfeasor. *Lane v. Nationwide Mut. Ins. Co.,* 321 Md. 165, 170, 582 A.2d 501, 503 (1990); *Nationwide Mutual Ins. v. Webb, supra,* 291 Md. at 736, 436 A.2d at 474; *Reese v. State Farm Mut. Auto. Ins.,* 285 Md. 548, 554, 403 A.2d 1229, 1232 (1979). When the insured chooses the second option, and notifies his or her insurer of the tort action, the issues of the uninsured/underinsured defendant's liability and the amount of damages are resolved in the tort action. *Lane v. Nationwide Mut. Ins. Co., supra,* 321 Md. at 173, 582 A.2d at 505; *Nationwide Mutual Ins. v. Webb, supra,* 291 Md. at 732-739, 436 A.2d at 471-476.

Under the second option, in the ordinary situation, if the defendant prevails in the tort action, or if the defendant is able to pay the amount of the plaintiff's damages as determined in the tort action despite the defendant's lack of sufficient insurance, there never will be an uninsured or underinsured motorist claim arising out of the matter. *See, Lane v. Nationwide Mutual Ins. Co., supra,* 321 Md. at 173-174, 582 A.2d at 505 ("Benefits under the uninsured motorist endorsement may never be demanded, as the insured may lose the tort action or the uninsured tortfeasor defendant may be able to pay the tort judgment rendered against him"). Consequently, if the insured chooses the second option, whether there will be an uninsured or underinsured motorist claim is not certain; it is only a possibility depending upon future events. When the insured informs his or her uninsured/underinsured motorist carrier of the tort suit, the carrier thereby receives notice of the possibility of a future uninsured or underinsured motorist claim. Under the circumstances, anything more than timely notice of the tort suit is neither feasible nor required by the cases.

▪ The uninsured/underinsured motorist insurance carrier is protected in this situation. When an insured plaintiff brings a tort action against an uninsured defendant, or against a defendant who may be underinsured, and when the plaintiff gives his or her insurance carrier timely notice of the tort

action, the uninsured/underinsured motorist carrier has a right to intervene immediately in the tort suit. Unlike a tort defendant's liability insurer which is ordinarily not permitted to be a party to the tort action prior to a determination of liability and damages, the tort plaintiff's uninsured/underinsured motorist carrier is entitled to be a party throughout the trial of the tort case. *Waters v. USF & G,* 328 Md. 700, 718 n. 9, 616 A.2d 884, 892 n. 9 (1992); *Washington Transit v. Queen,* 324 Md. 326, 332 n. 5, 597 A.2d 423, 426 n. 5 (1991); *Lane v. Nationwide Mutual Ins. Co., supra,* 321 Md. at 174, 582 A.2d at 505. The uninsured/underinsured motorist carrier has a right "to defend against the insured's tort claim ... regardless of whether the uninsured motorist is defending or not," *Nationwide Mutual Ins. v. Webb,* 291 Md. at 738, 436 A.2d at 475.

Here, not only did West American have actual notice of the underlying tort suit and have an opportunity to intervene prior to trial, but it actively participated in the trial, representing Jonathan's estate in the suit filed by Trooper Manuel and settling the trooper's claim during the first day of trial. As West American's counsel stated to the circuit court in this case,

> "[West American] knew all about the case. They have defended ... the young fellow that died in the accident in the case brought by the police officer.... So they knew all about the case."

Thus, because West American had notice of the underlying tort suit and an opportunity to intervene prior to trial, the requirements of due process were satisfied.

### III.

■ The policy issued to the Popas by West American states that West American "will pay damages which a covered person is legally entitled to recover from the owner or operator of" an uninsured or underinsured motor vehicle. West American contends that it should not be required to pay any benefits to the Popas in this case because the Popas are not

"legally entitled to recover" any amounts beyond the $50,000 already paid by the State. The insurance company advances two arguments in support of this contention. First, West American asserts that the Popas are not legally entitled to recover any additional amount against the State because the Popas filed an "Order of Satisfaction" to the judgment against the State. Second, West American argues that the Popas are not legally entitled to recover any additional amount against the State because the State has immunity for all amounts over the $50,000 already paid. According to West American, the order of satisfaction and the State's immunity from damages over $50,000 preclude "additional recovery from the State of Maryland" (Petitioner's brief at 12). The insurance company asserts that the Popas have no legal right to recover more than $50,000 from the State. We disagree with West American's arguments.

The policy language "legally entitled to recover," except for the word "legally," mirrors the language of the Insurance Code, Maryland Code (1957, 1991 Repl.Vol.), Art. 48A, § 541(c)(2), which provides that "every policy of motor vehicle liability insurance issued, sold, or delivered in this State after July 1, 1975 shall contain coverage ... for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle...." [2]

**2.** The 1991 version of the Insurance Code is applicable to this case inasmuch as the accident giving rise to the claim occurred on July 1, 1991. The uninsured motorist insurance provisions are currently codified at Maryland Code (1997), §§ 19–509 through 19–511 of the Insurance Article. There is no change in the above-quoted language in the current version of the Insurance Code.

To the extent, if any, that the wording of the Insurance Code may indicate broader coverage than the wording of the insurance policy, because the Insurance Code does not use the word "legally," the statutory language would prevail over the insurance policy language. *See, e.g., Staab v. American Motorists,* 345 Md. 428, 436–437, 693 A.2d 340, 344 (1997) ("the policy must be construed as though it did" reflect the requirements of the statute); *Forbes v. Harleysville Mutual,* 322 Md. 689, 702, 589 A.2d 944, 950 (1991) ("if the insurance policy contains a limitation on coverage which is inconsistent with Art. 48A, § 541(c), such limitation is unenforceable"); *Gable v. Colonial Ins. Co.,* 313 Md. 701, 703, 548 A.2d 135, 136 (1988) ("if the policy provision ... is

■ Both of West American's arguments rest upon the premise that the policy language "legally entitled to recover" means that if there is any legal bar to actual recovery from the uninsured or underinsured motorist, then the insured is not "legally entitled to recover" his actual damages from the uninsured or underinsured tortfeasor. Some courts have adopted this definition of the phrase "legally entitled to recover." *See, e.g., Nationwide Mut. Ins. Co. v. Nacchia,* 628 A.2d 48, 52 (Del.1993); *Silvers v. Horace Mann Ins. Co.,* 324 N.C. 289, 293–294, 378 S.E.2d 21, 24 (1989). Nevertheless, as pointed out by the Supreme Court of North Carolina in the *Silvers* case, 324 N.C. at 294, 378 S.E.2d at 25,

> "[t]he words 'legally entitled to recover' are subject to other interpretations. For example, in *Karlson v. City of Oklahoma City,* 711 P.2d 72 (Okla.1985), the Oklahoma Supreme Court interpreted the phrase as follows: 'The words, "legally entitled to recover[,]" simply mean that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to the damages and to prove the extent of those damages.' *Id.* at 74–75 (quoting *Uptegraft v. Home Ins. Co.,* 662 P.2d 681, 685 (Okla.1983))."

The Supreme Court of Kansas in *Winner v. Ratzlaff,* 211 Kan. 59, 64, 505 P.2d 606, 610 (1973), also adopted the broader definition of the phrase "legally entitled to recover," stating:

> "We construe the words 'legally entitled to recover as damages' to mean simply that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to the damages and to prove the extent of those damages."

The identical definition was adopted by the Supreme Court of Louisiana in *Booth v. Fireman's Fund Insurance Company,* 253 La. 521, 529, 218 So.2d 580, 583 (1968):

---

contrary to the Insurance Code, the provision is unenforceable"). *See also Enterprise v. Allstate,* 341 Md. 541, 549, 671 A.2d 509, 513 (1996); *Larimore v. American Ins. Co.,* 314 Md. 617, 623–624, 552 A.2d 889, 892 (1989); *Lee v. Wheeler,* 310 Md. 233, 238, 528 A.2d 912, 915 (1987).

"We interpret the words 'legally entitled to recover' to mean simply that the plaintiff must be able to establish fault on the part of the uninsured motorist which gives rise to damages and prove the extent of those damages.... If it be contended that the phrase 'legally entitled to recover' is ambiguous, the rule that ambiguities in insurance contracts must be construed in favor of the insured would constrain us to reach the same conclusion."

This Court in *Reese v. State Farm Mut. Auto. Ins., supra,* 285 Md. at 555–556, 403 A.2d at 1233–1234, quoting with approval the definition of "legally entitled to recover" set forth in the *Winner* and *Booth* cases, and citing several other cases, adopted the broader definition of the policy language. We held that "legally entitled to recover" in the uninsured motorist provisions of the policy meant only that the insured establish fault on the part of the uninsured or underinsured motorist and establish the amount of his or her damages. The definition of the phrase set forth in *Reese* is particularly appropriate in cases under the Maryland statute which, as pointed out earlier, does not use the word "legally." *See* n. 2, *supra.*

Under the meaning of "legally entitled to recover" or "entitled to recover" set forth in the *Reese* case, the Popas have shown that they are entitled to recover from the underinsured owner of the vehicle more than the amount of their uninsured and underinsured motorist coverage, less the $50,000 paid by the "underinsured" State of Maryland. They established fault on the part of the state employee and established their damages at $867,000. This is all that Maryland law requires under the circumstances here.

Furthermore, although West American makes separate arguments based on both the order of satisfaction and the statutory limit on recovery against the State, we note that the order of satisfaction simply reflected the limitation imposed by state law. The situation would be the same if no order of satisfaction had been filed. Moreover, the order of satisfaction recited that the payment was being made by the "State of

Maryland to the extent of its [waiver of] tort immunity, Fifty Thousand Dollars ($50,000)." The order of satisfaction went on to refer to the prior orders of the court, which included the order of March 3, 1994, denying the State's motion to revise the judgment but precluding the Popas from collecting more than $50,000 from the State.

We have held that the "substantive rights of the parties are not necessarily finally determined ... by the satisfaction of the judgment," and that the scope and effect of an order of satisfaction is determined by the parties' intent. *Franzen v. Dubinok*, 290 Md. 65, 72, 75, 427 A.2d 1002, 1006, 1008 (1981). It is obvious that, in filing the order of satisfaction, the Popas and the State simply intended to acknowledge the statutory limitation on recovery from the State.

Moreover, we have specifically held that when an insured plaintiff gives his uninsured/underinsured motorist carrier timely notice of the tort action, and when the uninsured/under-insured provisions of the insurance policy do not contain a clause requiring the carrier's consent before the insured can settle with the tortfeasor, the insured is entitled to enter a settlement or a consent judgment with the tortfeasor without obtaining the consent of or without further notice to the carrier. Under these circumstances, the uninsured/underin-sured motorist carrier "is ordinarily bound by the settlement of the suit." *Waters v. USF & G, supra*, 328 Md. at 718, 616 A.2d at 892. The uninsured/underinsured motorist provisions of the West American policy involved in the present case do not contain a "consent to settle" or similar clause. Conse-quently, under the *Waters* holding, the order of satisfaction does not relieve West American of liability.[3]

---

3. In the situation where an insured plaintiff brings a tort action against a private underinsured tortfeasor, and the tortfeasor and/or his liability carrier offer the maximum under the liability policy, and the insured accepts the sum and gives a release or an order of satisfaction without obtaining the consent of his or her underinsured motorist carrier, the cases deciding whether the insured is precluded from recovering from his underinsured motorist carrier usually focus upon clauses in the underinsured motorist provisions of the policy requiring the consent of

Finally, West American's argument based on the order of satisfaction also appears to be inconsistent with the insurance

the insurer to settle with, or expressly granting to the insurer a subrogation right against, the underinsured tortfeasor.

Some cases hold that "consent to settle" or "subrogation" clauses cannot validly bar the insured's statutory right to recover the difference from his or her underinsured motorist carrier. *See, e.g., Niemann v. Travelers Ins. Co.,* 368 So.2d 1003 (La.1979); *Hamilton v. Farmers Ins. Co.,* 107 Wash.2d 721, 728–729, 733 P.2d 213, 217 (1987). Other cases hold that such clauses are valid and, in this situation, preclude recovery against the underinsured motorist carrier. *See, e.g., Nationwide Mutual Ins. Co. v. Nacchia,* 628 A.2d 48 (Del.1993); *Darby v. Mathis,* 212 Ga.App. 444, 441 S.E.2d 905 (1994); *March v. Mountain States Mut. Cas. Co.,* 101 N.M. 689, 687 P.2d 1040 (1984).

Most cases, however, appear to take various middle positions in this situation. *See, e.g., Lambert v. State Farm,* 576 So.2d 160, 167 (Ala. 1991) (when insured gives underinsured carrier notice of proposed settlement, and carrier then refuses to consent or pay insured amount of proposed settlement, insured can settle without prejudicing his or her right to recover against the underinsured carrier); *Grinnell Mut. Reinsurance Co. v. Recker,* 561 N.W.2d 63, 68 (Iowa 1997) (settlement with the tortfeasor does not preclude recovery of the difference from underinsured carrier unless the carrier can prove that "it could have collected from the tortfeasor"); *Coots v. Allstate Ins. Co.,* 853 S.W.2d 895, 900 (Ky.1993) (settlement is no bar if the underinsured carrier had prior notice of the proposed settlement); *MacInnis v. Aetna Life & Cas. Co.,* 403 Mass. 220, 223, 526 N.E.2d 1255, 1258 (1988) (underinsurer "must prove material prejudice resulting from its policyholder's violation of a consent-to-settlement provision in order to rely on that violation as an affirmative defense"); *Sorensen v. Farmers Ins. Exchange,* 279 Mont. 291, 295–297, 927 P.2d 1002, 1004–1005 (1996) (settlement with the tortfeasor is no bar unless the underinsured carrier can prove prejudice by showing that the tortfeasor was not judgment proof); *Longworth v. Van Houten,* 223 N.J.Super. 174, 185–186, 538 A.2d 414, 420 (1988); *McDonald v. Republic–Franklin Ins. Co.,* 45 Ohio St.3d 27, 543 N.E.2d 456 (1989); *Buzzard v. Farmers Ins. Co.,* 824 P.2d 1105, 1113 (Okl.1991); *Ranes v. American Family Mut. Ins. Co.,* 219 Wis.2d 49, 580 N.W.2d 197 (1998).

In *Nationwide Mutual Ins. v. Webb,* 291 Md. 721, 740, 436 A.2d 465, 476 (1981), and *Waters v. USF & G,* 328 Md. 700, 717, 616 A.2d 884, 892 (1992), we discussed "consent to settle" clauses in the context of uninsured and underinsured motorist insurance, but the holdings in those cases do not directly decide the issue discussed above. West American in the present case makes no argument based on a "consent to settle" or "subrogation" clause, and as previously mentioned, the underinsured motorist provisions of the policy issued to the Popas do not contain such clauses. Consequently, we need not in this case address the question discussed in the above-cited cases.

policy which it issued to the Popas. The policy states as follows:

"We will pay under this coverage only after the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements".

Thus, the policy issued to the Popas by West American purports to require the Popas to accept the payment of a judgment before any uninsured or underinsured motorists benefits will be paid by West American. Ordinarily an underinsured motorist would require the filing of an order of satisfaction as a condition to paying the policy maximum under a judgment. Although it may be doubtful that the above-quoted policy provision could be enforced by West American against its insured, *see Reese v. State Farm Mut. Auto. Ins., supra*, 285 Md. at 553–556, 403 A.2d at 1232–1234, West American is in no position to complain when its insured complies with the provisions of the insurance policy. Even in jurisdictions which have adopted the narrow definition of the phrase "legally entitled to recover" espoused by West American, and even when the policy contains a "consent to settle" clause, it has been held that, when the policy also contains the above-quoted exhaustion clause, the insured's "entry of a consent judgment with the tortfeasors and their carrier does not bar her ... from recovering under the UIM [underinsured] coverage of her policy," *Silvers v. Horace Mann Ins. Co., supra*, 324 N.C. at 296, 378 S.E.2d at 26.

Turning to West American's argument based upon the $50,000 statutory cap upon the State's liability, the monetary limit under the Maryland Tort Claims Act is very much like a private defendant's liability insurance limits. Although the State of Maryland has sovereign immunity from tort actions for money damages, the State waived that immunity in the Maryland Tort Claims Act, currently codified at Code (1984, 1995 Repl.Vol., 1998 Supp.) §§ 12–101 through 12–110 of the State Government Article. *See generally Kee v. State Highway Admin.*, 313 Md. 445, 545 A.2d 1312 (1988). The Legislature has also granted immunity from tort suits to state personnel acting within the scope of their public duties, with-

out malice or gross negligence, if the State has in the Tort Claims Act waived immunity for such acts. *See* Code (1974, 1995 Repl.Vol., 1997 Supp.), § 5–522(b) of the Courts and Judicial Proceedings Article.

The version of the Maryland Tort Claims Act in effect when the accident in this case occurred, Code (1984, 1993 Repl.Vol.), § 12–104 of the State Government Article, provided as follows:

" § **12–104. Waiver of immunity.**

"(a) *In general.* —Subject to the exclusions and limitations in this subtitle, the immunity of the State and of its units is waived as to a tort action, in a court of the State, to the extent of insurance coverage under Title 9 of the State Finance and Procurement Article."

Additionally, Code (1988, 1991 Cum.Supp.), § 9–105(c) of the State Finance and Procurement Article stated as follows:

" § **9–105. Forms of insurance.**

\* \* \*

"(c) *Coverage for Maryland Tort Claims Act.*—To the extent that funds are available in the State budget, the Treasurer shall provide sufficient self-insurance, purchased insurance, or both to cover the liability of the State and its units and personnel under the Maryland Tort Claims Act."

The amount of "self-insurance" available in the State budget for the accident in the case at bar was $50,000.

Although the wording and codification of the above-quoted provisions has changed somewhat since 1991, the substance of the provisions has remained the same, except that the present monetary cap for a single incident or occurrence is $100,000. *See* Code (1984, 1995 Repl.1998 Supp.), § 12–104(a)(2) of the State Government Article. Also, the present § 12–104(c) of the State Government Article, entitled "Payment of claims exceeding coverage," authorizes the State Treasurer to pay "from the State Insurance Trust Fund" a tort claim exceeding $100,000 with the approval of the Board of Public Works.

The nature of the State's liability under the Maryland Tort Claims Act was explained by Judge Rodowsky for the Court in

*State v. Jett,* 316 Md. 248, 257, 558 A.2d 385, 389 (1989), as follows:

"No longer does the concept of sovereign immunity embody a strong element of freedom from suit because the Act contains a broad consent to suit. No longer is there heavy emphasis on protecting state officials and employees from disruption in the performance of their duties by defending against tort claims. Rather, under the Act, emphasis shifts to protection of the public treasury by limiting the financial exposure. This is accomplished through a number of techniques including limiting the State's waiver to the extent of insurance coverage procured...."

Consequently, both in 1991 and today, the monetary limits upon payment by the State under the Maryland Tort Claims Act have been treated as a limitation upon self-insurance coverage. To the extent that a plaintiff-insured's damages exceed the amount of the State's self-insurance coverage, the State is underinsured. A plaintiff-insured has paid a premium to his own insurance carrier to pay this difference up to the limit of his underinsured motorist coverage.

Several decisions elsewhere are in accord that a tortfeasor's governmental immunity does not preclude an insured from recovering his damages from his uninsured or underinsured motorist carrier. *See, e.g., State Farm Auto. Ins. Co. v. Baldwin,* 470 So.2d 1230, 1234 (Ala.1985) (stating that "in keeping with the intent of the uninsured motorist statute" the claimant was legally entitled to recover despite sovereign immunity); *Michigan Millers Mut. Ins. Co. v. Bourke,* 607 So.2d 418, 421–422 (Fla.1992) (holding that a local government's immunity from liability for tort claims over a certain amount was no bar to recovery of uninsured motorist benefits); *Tinsley v. Worldwide Ins. Co.,* 212 Ga.App. 809, 811, 442 S.E.2d 877, 879 (1994); *Allstate Ins. Co. v. Elkins,* 77 Ill.2d 384, 390, 33 Ill.Dec. 139, 396 N.E.2d 528, 531 (1979); *State Farm Mut. Auto. Ins. Co. v. Estate of Braun,* 243 Mont. 125, 793 P.2d 253 (1990); *Oakley v. Thomas,* 112 N.C.App. 130, 434 S.E.2d 663 (1993); *North Carolina Farm Bur. Mut. Ins. Co. v. Knudsen,* 109 N.C.App. 114, 426 S.E.2d 88, *rev. denied,* 334

N.C. 165, 432 S.E.2d 365 (1993); *Gabriel v. Minnesota Mut. Fire & Casualty Co.*, 506 N.W.2d 73, 77 (N.D.1993) (holding that the claimants were eligible for uninsured motorist benefits because they were legally entitled to recover against a school district despite limitations on the tort liability of the school district); *Karlson v. City of Oklahoma*, 711 P.2d 72 (Okl.1985) ("in a situation where the liability of a tortfeasor is limited by the Political Subdivisions Tort Claims Act, to an amount which will not compensate an insured for all his proven losses suffered in an automobile accident, that insured may recover from his insurer through the uninsured/underinsured motorist provisions of his automobile liability insurance . . .").

The Maryland Tort Claims Act, which waives the State's immunity from most tort actions, was enacted to expand, not narrow, the recovery available to persons injured by the tortious acts of state government employees. Under West American's argument, however, the effect of the Tort Claims Act would be to reduce the amount which many injured motorists could recover. For example, under the facts of the present case, if the Tort Claims Act had never been enacted, the Popas would have been entitled to a judgment against Trooper Manuel for $867,000. If Trooper Manuel were uninsured, the Popas clearly would have been entitled to recover $300,000 from West American under their uninsured motorist coverage. If Trooper Manuel were insured for only $50,000, the Popas clearly would have been entitled to recover $250,000 from West American under their underinsured motorist coverage. Nevertheless, because the State, in order to benefit motorists injured by the tortious acts of state employees, substituted its liability for Trooper Manuel's with a $50,000 self-insurance maximum in effect at the time, West American's position is that the Popas can recover nothing under their uninsured/underinsured motorist coverage. We do not believe that the General Assembly, in enacting the Tort Claims Act and the uninsured/underinsured provisions of the Insurance Code, intended any such anomalous result.

## IV.

■ West American contends that the Popas are not entitled to recover underinsured motorist benefits under their policy because the state police car driven by Trooper Manuel was not an uninsured/underinsured vehicle in light of two different exclusions in the insurance policy issued to the Popas. The policy states that an uninsured/underinsured vehicle does not include a vehicle "(2) Owned or operated by a self-insurer under any applicable motor vehicle law" and does not include a vehicle "(3) Owned by any governmental unit or agency." Thus, West American concludes that the underinsured motorist provisions of the policy have not been triggered because the state police car was both owned by the State and self-insured. Each of these exclusions, however, is void under the Maryland Insurance Code.

Maryland law requires every policy of motor vehicle liability insurance issued, sold or delivered in Maryland to contain uninsured/underinsured motorist coverage. The statute authorizes insurers to exclude uninsured/underinsured coverage in two specific situations. Code (1957, 1991 Repl.Vol.), Art. 48A, § 541(c)(2), stated as follows:

\* \* \*

"However, the insurer may exclude from coverage benefits for:

(i) The named insured or members of his family residing in the household when occupying, or struck as a pedestrian by, an uninsured motor vehicle that is owned by the named insured or a member of his immediate family residing in his household; and

(ii) The named insured, members of his family residing in the household, and all other persons having other applicable automobile insurance and occupying, or struck as a pedestrian by, the insured motor vehicle operated or used by a person excluded from coverage under § 240C–1 of this article. . . ."

The exclusions relied on by West American are not within the above-quoted authorization.

This Court has consistently held that exclusions from statutorily mandated insurance coverage not expressly authorized by the Legislature generally will not be recognized. *See, e.g., Enterprise v. Allstate,* 341 Md. 541, 547, 671 A.2d 509, 512 (1996) ("Where the Legislature has mandated insurance coverage, this Court will not create exclusions that are not specifically set out in the statute"); *Van Horn v. Atlantic Mutual,* 334 Md. 669, 686, 641 A.2d 195, 203 (1994) ("this Court has generally held invalid insurance policy limitations, exclusions and exceptions to the statutorily required coverages which were not expressly authorized by the Legislature"); *Allstate Ins. Co. v. Hart,* 327 Md. 526, 531–532, 611 A.2d 100, 102 (1992); *Larimore v. American Ins. Co.,* 314 Md. 617, 622, 552 A.2d 889, 891 (1989); *Nationwide Mutual Ins. Co. v. USF & G,* 314 Md. 131, 141, 550 A.2d 69, 74 (1988); *Gable v. Colonial Ins. Co.,* 313 Md. 701, 704, 548 A.2d 135, 137 (1988) ("As a matter of statutory construction, where the Legislature has required specified coverages in a particular category of insurance, and has provided for certain exceptions or exclusions to the required coverages, additional exclusions are generally not permitted"); *Lee v. Wheeler,* 310 Md. 233, 239, 528 A.2d 912, 915 (1987) ("we will not imply exclusions nor recognize exclusions beyond those expressly enumerated by the legislature"); *Jennings v. Government Employees,* 302 Md. 352, 358–359, 488 A.2d 166, 169 (1985) ("we will not insert exclusions from the required coverages beyond those expressly set forth by the Legislature"); *Nationwide Mutual Ins. v. Webb, supra,* 291 Md. at 730, 436 A.2d at 471 ("conditions or limitations in an uninsured motorist endorsement, which provide less than the coverage required by the statute, are void"); *Pennsylvania Nat'l Mut. v. Gartelman,* 288 Md. 151, 160–161, 416 A.2d 734, 739 (1980).

The Maryland compulsory motor vehicle insurance law expressly recognizes approved liability self-insurance. *See* Code (1977, 1992 Repl Vol.), § 17–103(a) of the Transportation Article. It is very unlikely that the General Assembly, recognizing approved self-insurance as the equivalent of an insurance policy, would have intended to permit a "self-insurance"

exclusion to the required underinsurance coverage without expressly authorizing such exclusion. It is also highly unlikely that the General Assembly would have intended to permit exclusions from the mandatory uninsured/underinsured coverage based upon the ownership of the underinsured tortfeasors' vehicles without expressly authorizing such exclusions.

The self-insured and the government-owned exclusions upon which West American relies have no basis in the statutory language. Because they are not authorized by the General Assembly, they are void.

■ West American alternatively argues that the two exclusions from uninsured/underinsured coverage are void only to the extent of the $20,000/$40,000 statutorily required minimum liability insurance limits. West American argues broadly that whenever a provision in an insurance policy provides that there shall be no coverage under particular circumstances, and the policy provision conflicts with the statute, the policy provision is void only to the extent of the $20,000/$40,000 statutorily required minimum liability insurance limits and is valid for the portion of a claim exceeding those limits. In support of this proposition, West American relies on two opinions of this Court, *Larimore v. American Ins. Co.*, 314 Md. 617, 552 A.2d 889 (1989), and *State Farm Mut. v. Nationwide Mut.*, 307 Md. 631, 516 A.2d 586 (1986).

■ The opinion in *Larimore v. American Ins. Co., supra,* furnishes no support for the principle urged by West American. *Larimore* held that a "fellow employee" exclusion in a motor vehicle liability insurance policy was void under Maryland's compulsory motor vehicle insurance law. A second issue presented in the certiorari petition in that case was whether, if the exclusion was void, the liability carrier was liable up to the stated policy limits or only to the extent of the statutorily required minimum. As this Court noted, however, 314 Md. at 622 n. 2, 552 A.2d at 891 n. 2, at oral argument before us the petitioner in effect withdrew the second question and took the position that the respondent insurer would be liable only to the extent of the statutorily required minimum.

Therefore, "[t]he only question before this Court ... [was] whether the fellow employee exclusion is valid." *Ibid.* A petitioner's withdrawal of a question presented to this Court furnishes no authority for answering the question one way or another.

In *State Farm Mut. v. Nationwide, supra,* this Court held that a "household exclusion" to liability coverage in an automobile insurance policy was invalid only to the extent of the $20,000/$40,000 statutorily prescribed minimum liability coverage. The holding of the *State Farm Mut.* case, however, has not been applied by this Court to any other automobile insurance policy exclusions or provisions. Moreover, we have specifically declined to apply the *State Farm Mut.* holding in a context other than the household exclusion to liability coverage. *See Van Horn v. Atlantic Mutual, supra,* 334 Md. at 694–696, 641 A.2d at 207–208.

Adoption of the broad proposition advanced by West American would permit insurers to load up motor vehicle insurance policies with a multitude of invalid exclusions, thereby limiting coverage in numerous situations to the statutory minimums instead of the stated coverage limits set forth on the insured's declaration page. For example, an insured could purchase what he believed was $300,000 liability insurance, pay a premium for $300,000 liability insurance, and, after an accident, discover that he has only $20,000/$40,000 liability insurance because the circumstances fell within one or more of the many invalid exclusions or exceptions in the insurance policy. Persons who paid much more in premiums for coverage in excess of minimums could, in many circumstances, receive no more than those who only paid for minimum coverages. Consequently, we decline to extend the holding of *State Farm Mut. v. Nationwide, supra,* beyond the household exclusion clause which was involved in that case.

Furthermore, the present case is a particularly inappropriate one for applying the holding of *State Farm Mut. v. Nationwide Mut., supra.* Under the Maryland Insurance Code, the statutorily required minimum uninsured/underin-

sured coverage which an insurer must offer is not $20,000/$40,000. Instead, an insurer must offer an amount of uninsured/underinsured coverage equal to the liability coverage provided for in the policy. *See* Code (1997), § 19–509(e) of the Insurance Article; Code (1957, 1994 Repl.Vol.), Art. 48A, § 541(g)(1). Under statutory provisions like Maryland's in this regard, courts elsewhere have rejected arguments similar to West American's. *See, e.g., Employers Mut. Cas. Co. v. McKeon,* 159 Ariz. 111, 115, 765 P.2d 513, 517 (1988); *Spain v. Valley Forge Ins. Co.,* 152 Ariz. 189, 193, 731 P.2d 84, 88 (1986); *Threats v. Derousselle,* 636 So.2d 276 (La.App. 1994); *Schoer v. West Bend Mut. Ins. Co.,* 473 N.W.2d 73 (Minn.App.1991); *Bray v. North Carolina Farm Bur. Mut. Ins. Co.,* 341 N.C. 678, 685, 462 S.E.2d 650, 654 (1995).

In this case, as required by the statute, West American offered and the Popas accepted underinsured motorist coverage in the amount of $300,000. Therefore, the Popas are entitled to underinsured motorist benefits in the amount of $300,000, less the $50,000 already recovered from the underinsured motorist, the State of Maryland.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.*