945 A.2d 629

David MAURER

v.

**PENNSYLVANIA NATIONAL MUTUAL
CASUALTY INSURANCE CO.**

No. 131, Sept. Term, 2006.

Court of Appeals of Maryland.

Dec. 6, 2007.

Reconsideration Denied March 7, 2008.

Joseph B. Espo (Brown, Goldstein & Levy, LLP, Baltimore), on brief, for appellant.

Frank F. Dailey (The Law Offices of Frank F. Daily, P.A., Hunt Valley), on brief, for appellee.

Argued before RAKER,* CATHELL, HARRELL, GREENE, JOHN C. ELDRIDGE (Retired, Specially Assigned), ALAN M. WILNER (Retired, Specially Assigned), and ** THEODORE G. BLOOM (Retired, Specially Assigned), JJ.

JOHN C. ELDRIDGE, Judge, Retired, Specially Assigned.

The appellant David Maurer was the passenger in an automobile involved in an accident, and he sustained serious personal injuries. Maurer initiated this underinsured motorist action against his insurer, the appellee Pennsylvania National Mutual Casualty Insurance Co., in the Circuit Court for Baltimore City. Following a jury verdict and judgment in favor of the defendant Penn National, Maurer has prosecuted this appeal. Maurer argues that the trial judge erred when he instructed the jury that violation of a statute is evidence of negligence and, immediately after that instruction, described statutes which were irrelevant to the issues before the jury. The statutes are Maryland Code (1977, 2006 Repl.Vol.), §§ 11–174.1 and 21–902(a)(2) of the Transportation Article, making it illegal to drive any vehicle when the driver has "an alcohol concentration at the time of testing of 0.08 or more," and Maryland Code (2002), § 10–113 of the Criminal Law Article,

---

* Cathell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

** Bloom, J., participated in the hearing and in the conference of the case in regard to its decision, but died prior to the adoption of the opinion by the Court.

prohibiting the making of a false statement as to age for the purpose of unlawfully obtaining an alcoholic beverage. Penn National argues that the statutes were relevant to its defenses of contributory negligence and assumption of the risk. We shall hold that the trial judge erred in giving the challenged instructions and that, therefore, the judgment shall be reversed and the case remanded for a new trial.

## I.

On the night of January 9, 2004, 19–year–old Thomas Hesselbein invited his friend, David Maurer, also 19 years old, to go to a restaurant and bar named "Champs." Hesselbein, driving his own automobile, picked up Maurer at Maurer's parents' home. The two men, with Hesselbein driving, went directly to Champs, arriving at approximately 11:15 p.m. Upon arriving at Champs, Maurer used a false identification card to purchase a "shot" consisting of "Jagermeister, Rumplemintz, and Goldschlager," and called "liquid heroin" or "liquid cocaine." Hesselbein also apparently purchased and consumed the same type of alcoholic beverage. Next, Maurer and Hesselbein sat at a table with two other persons, and they both recalled that there was a pitcher of beer on the table. Apart from their initial drinks, Maurer and Hesselbein could not remember how much they drank at Champs. Maurer testified that, to the best of his recollection, he did not purchase any alcoholic beverages for Hesselbein. According to Hesselbein's testimony, he could not recall that anyone purchased alcoholic beverages for him, or how much he consumed. Both of them left Champs after about two and a half hours, with Hesselbein driving and Maurer occupying the front passenger seat.

On their way home, Hesselbein lost control of his car and "struck an object on the front lawn of a house." Neither Hesselbein nor Maurer remembered the accident, but there were two eyewitnesses. Neither eyewitness saw anything in the road to cause the accident. One of the eyewitnesses saw Hesselbein's car slide around a corner and hit a telephone pole. A police officer concluded that Hesselbein was driving

at a high rate of speed. At the time of the accident, Hessel-bein's blood alcohol level was 0.16 grams per milliliter of blood, and Maurer's blood alcohol level was 0.19 grams per milliliter of blood.

Maurer notified his insurer Penn National of the accident. Subsequently Hesselbein's liability insurer, GEICO, offered to Maurer the $25,000.00 liability policy limit under Hesselbein's automobile insurance policy as a settlement. This represented only partial compensation for Maurer's damages. Pursuant to Maryland Code (1996, 2006 Repl.Vol.), § 19–511(a) of the Insurance Article, Maurer notified Penn National of the settle-ment offer, thereby giving Penn National 60 days either to consent to the settlement offer or to send a "written refusal to consent to acceptance of the settlement offer." *See* § 19–511(b) of the Insurance Article. Penn National consented to the settlement, and Maurer then accepted the $25,000.00 from GEICO.

Thereafter, Maurer filed in the Circuit Court for Baltimore City a complaint against Penn National, seeking additional payment, pursuant to the "underinsured" coverage of his insurance policy, for his injuries sustained in the accident. Maurer's policy issued by Penn National contained uninsured and underinsured motorist coverage with limits of $225,000.00. Maurer alleged in his complaint that he had "complied with all terms of the policy and is entitled to be paid by Penn National for any and all damages sustained by plaintiff resulting from the negligence of Hesselbein." The complaint asserted that Penn National breached the insurance policy when it failed to pay Maurer's damages in excess of the $25,000.00 received from Hesselbein's liability insurer.

During the trial, Penn National agreed that Maurer's insur-ance policy covered damages for bodily injuries and losses sustained from an underinsured motorist in a maximum amount of $225,000.00. The Circuit Court granted Maurer's motion for partial summary judgment, holding that Hesselbein was negligent as a matter of law. After the close of the evidence, Maurer also moved for judgment on the ground that

**66**

there was insufficient evidence to submit the issues of Maurer's alleged contributory negligence and assumption of the risk to the jury. The court denied this motion.

The issues presented to the jury were whether Maurer was contributorily negligent and/or whether he assumed the risk of his injuries. If the jury answered no to both of those questions, it was to determine the damages to be awarded to Maurer. After explaining to the jury that it should not make any finding regarding Hesselbein's negligence, the trial judge instructed the jury as follows:

"I instruct you that the violation of a statute which is a cause of the plaintiff's injuries or damages is evidence of negligence. There is a section of the Maryland criminal law code which provides as follows. An individual may not knowingly and willfully make a misrepresentation or false statement as to the age of that individual to another or to any person licensed to sell alcoholic beverages for the purpose of unlawfully obtaining, procuring, or having unlawfully furnished an alcoholic beverage.

"I further instruct you that under the law of Maryland, and this is also part of the statutes of Maryland, that if at the time of testing a person has an alcohol concentration of 0.08 or more as determined by an analysis of that person's blood or breath, that that person shall be considered under the influence of alcohol per se. Which means just by the fact that it exists."

Maurer had objected to these jury instructions before they were given and also objected to them after they were read to the jury. The jury found in favor of Penn National, deciding that Maurer was contributorily negligent. Maurer appealed to the Court of Special Appeals. Prior to argument in the intermediate appellate court, this Court issued a writ of certiorari. *Maurer v. PA National,* 397 Md. 107, 916 A.2d 256 (2007).

## II.

Maurer argues that the Circuit Court erred because it gave the jury irrelevant and prejudicial instructions. He asserts

that the "influence of alcohol per se" statute referenced in the jury instructions did not concern the intoxication or negligence of a passenger in a car and that, therefore, the statute was irrelevant in determining whether Maurer's behavior was contributorily negligent. Furthermore, Maurer points out that the jury knew that the instruction and statutory reference did not apply to Hesselbein, because the judge had instructed the jury not to consider Hesselbein's negligence. According to Maurer, the instructions misled the jury to the conclusion that Maurer's blood alcohol concentration, which was above 0.08, violated the per se statute, showed that he was intoxicated, and thus was evidence of his contributory negligence.

Similarly, Maurer argues that the trial court erred by instructing the jury that the misrepresentation of one's age to purchase alcohol in violation of Maryland law may be evidence of negligence. Maurer contends that his violation of the age misrepresentation statute was not a proximate cause of the accident responsible for his injuries and, consequently, is not evidence of his contributory negligence.

Penn National responds that the trial judge properly instructed the jury. According to Penn National, the instruction concerning the blood alcohol level of 0.08 was "a harmless means of providing the jury some additional context for their consideration of the evidence of blood alcohol levels." (Appellee's brief at 13). Penn National argues that it was relevant "for the jury to know that the law deems a driver to be intoxicated at 0.08 and, if Mr. Hesselbein was .16 as so stipulated, then Mr. Maurer perhaps should have had an easy appreciation of that intoxication." (*Id.* at 14). In addition, Penn National asserts that, even if the instruction was erroneous, it was not prejudicial because there was other evidence of Hesselbein's intoxication. In light of the other evidence of Hesselbein's intoxication, Penn National maintains that the jury could still conclude that Maurer understood that Hesselbein should not drive.

Penn National also argues that the instruction regarding the misrepresentation of one's age to purchase alcohol was

relevant to the insurer's contributory negligence and assumption of risk defenses. Penn National maintains that Maurer's "use of false identification to obtain alcohol was directly related to, and in fact was a direct cause of ... his injuries that evening." (*Id.* at 10). In addition, Penn National asserts that the jury could have concluded, from the circumstantial evidence, that Maurer purchased alcohol for Hesselbein and that such purchase contributed to the accident.

## III.

The trial judge's instruction concerning the principle that violations of statutes may be evidence of negligence, combined with the judge's instructions on the two statutes, constituted error. Neither statute was relevant to the issues presented to the jury.

The general rule regarding jury instructions requires that " '(1) the instruction must correctly state the law, and (2) that law must be applicable in light of the evidence before the jury.' " *Benik v. Hatcher,* 358 Md. 507, 519, 750 A.2d 10, 17 (2000), quoting *Sergeant Co. v. Pickett,* 285 Md. 186, 194, 401 A.2d 651, 655 (1979). To the same effect, *see, e.g., Goldberg v. Boone,* 396 Md. 94, 122, 912 A.2d 698, 714 (2006); *Landon v. Zorn,* 389 Md. 206, 224–225, 884 A.2d 142, 153 (2005), and cases there cited.

Also, it is a settled common law rule in Maryland that a violation of a relevant statute or ordinance may be evidence of negligence to be considered by the trier of fact, although such violation does not establish negligence or "contributory negligence as a matter of law." *Absolon v. Dollahite,* 376 Md. 547, 553–554, 831 A.2d 6, 9 (2003), and cases there cited. Moreover, there are additional prerequisites for a violation of a statute to constitute evidence of negligence. In *Polakoff v. Turner,* 385 Md. 467, 476, 869 A.2d 837, 843 (2005), this Court stated that, "in order to make out a prima facie case in a negligence action, ... a plaintiff must show ... (a) the violation of a statute or ordinance designed to protect a specific class of persons which includes the plaintiff, and (b)

that the violation proximately caused the injury complained of." *See also Brooks v. Lewin Realty III, Inc.,* 378 Md. 70, 79, 835 A.2d 616, 621 (2003) (same); *Bentley v. Carroll,* 355 Md. 312, 325, 734 A.2d 697, 704–705 (1999) ("[T]he violation of a statutory duty may furnish evidence of negligence. The positive evidentiary value of the statutory violation, however, is subject to the condition that the person alleging the negligence is within the class of persons sought to be protected, and the harm is of a kind which the statute was intended, in general, to prevent").

■ Both the "influence of alcohol per se" statute and the age misrepresentation statute fail to meet the above-summarized criteria for jury instructions and for the principle that violations of statutes may constitute evidence of negligence.

Maryland Code (1977, 2006 Repl.Vol.), § 21–902(a) of the Transportation Article, provides as follows (emphasis added):

"(a) *Driving while under the influence of alcohol or under the influence of alcohol per se.—*(1) A person may not drive or attempt to drive any vehicle while under the influence of alcohol.

"(2) *A person may not drive or attempt to drive* while the person is under the influence of alcohol per se."

Section 11–174.1 of the Transportation Article defines "[u]nder the influence of alcohol per se" as "having an alcohol concentration at the time of testing of 0.08 or more as measured by grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath."

■ The statutory provisions making it unlawful to have a 0.08 blood alcohol concentration relate solely to the driver of the vehicle. Maurer neither drove nor attempted to drive the vehicle. He was at all pertinent times a passenger in Hesselbein's automobile. Sections 11–174.1 and 21–902(a)(2) of the Transportation Article have no application to motor vehicle passengers.[1]

---

1. There is a separate statute which prohibits the intoxication of all individuals, including nondrivers, in certain circumstances. Maryland Code (1957, 2005 Repl.Vol.), Art. 2B § 19–101, provides as follows:

As earlier pointed out, Penn National argues that the instruction regarding the "influence of alcohol per se" statutory provisions "provid[ed] the jury some additional context for their consideration of blood alcohol levels" and showed that Hesselbein was sufficiently intoxicated that "Maurer perhaps should have had an easy appreciation of that intoxication." (Appellee's brief at 13, 14). The instruction on the "influence of alcohol per se" statutory provisions, however, was not given in these contexts or for these purposes. Instead, the trial judge gave the "influence of alcohol per se" instruction in the context of, and as a follow up to, the instruction "that the violation of a statute . . . is evidence of" Maurer's contributory negligence. These two instructions, given together, may have resulted in the jury's conclusion that Maurer violated the "influence of alcohol per se" statute and that, solely because of such violation, Maurer was contributorily negligent.

Since it is clear that Maurer, as a passenger, did not violate the "influence of alcohol per se" statutory provisions, the combination of the two instructions was erroneous. The instructions did not "correctly state[ ] the law" and they were not "applicable in light of the evidence before the jury." *Goldberg v. Boone, supra,* 396 Md. at 122, 912 A.2d at 714.

Another flaw in Penn National's argument is that the "influence of alcohol per se" statutory provisions do not set forth a guideline or standard for determining whether a person is actually under the influence of alcohol or is actually intoxicated. Sections 11–174.1 and 21–902(a)(2) of the Transportation Article do not give rise to an inference or rebuttable presumption that an individual with an alcohol concentration of 0.08 or more is under the influence of alcohol or is intoxicated.

---

"(a) *Prohibited acts.*—A person may not:
(1) Be intoxicated and endanger the safety of another person or property; or
(2) Be intoxicated or drink any alcoholic beverage in a public place and cause a public disturbance."
This statute was not referred to in the jury instructions. Absent from this statute is any identification of a blood alcohol level that would establish intoxication.

Instead, the conduct proscribed by these provisions is driving or attempting to drive a motor vehicle with a blood alcohol concentration of 0.08 or more regardless of whether the driver is or is not actually under the influence of alcohol. The offense under §§ 11–174.1 and 21–902(a)(2) is driving while having a blood alcohol concentration of 0.08 or more; the offense is not driving while actually under the influence of alcohol.

Thus, in *Meanor v. State*, 364 Md. 511, 774 A.2d 394 (2001), the defendant was charged under § 21–902 of the Transportation Article. At trial, the judge instructed the jury that, if it found that the defendant had a blood alcohol concentration exceeding 0.10 at the time of testing, he was intoxicated.[2] This Court held that the instruction was in error because the defendant was properly only charged with "driving while intoxicated" and not "driving while intoxicated per se," which is a separate offense. The Court stated that, "[a]lthough the jury certainly could have found that Meanor was driving while intoxicated based on that BAC test result, the test result itself does not establish intoxication." *Meanor*, 364 Md. at 527, 774 A.2d at 403. As the Court explained in Meanor, the alcohol concentration test alone did not establish actual intoxication.

Although other statutory provisions, not referred to by the trial judge, might have been pertinent, it was prejudicial error to instruct the jury on §§ 11–174.1 and 21–902(a)(2) of the Transportation Article, immediately following the instruction that violation of a statute is evidence of negligence. Maurer, as a passenger, did not violate these statutory provisions. Furthermore, these particular statutory provisions do not furnish a standard for determining whether one is actually under the influence of alcohol.

---

2. When the alleged offense occurred in Meanor, § 11–174.1 of the Transportation Article defined "intoxicated per se" as "having an alcohol concentration at the time of testing of 0.10 or more...." This section has been amended to lower the requisite alcohol concentration level to 0.08. In addition, "intoxicated per se" has been replaced with "under the influence of alcohol per se."

■ The Circuit Court also erred by combining the instruction that violation of a statute is evidence of negligence with the instruction on the statute criminalizing the misrepresentation of one's age for the purpose of unlawfully obtaining an alcoholic beverage. As previously discussed, in order to constitute evidence of negligence, it must be shown, inter alia, " 'that the [statutory] violation proximately caused the injury complained of.' " *Polakoff v. Turner, supra,* 385 Md. at 483, 869 A.2d at 847, quoting *Brooks v. Lewin Realty III, Inc., supra,* 378 Md. at 79, 835 A.2d at 621. "Negligence, . . . by showing a violation of a relevant statute, is not actionable unless it is a proximate cause of the harm." *Atlantic Mutual v. Kenney,* 323 Md. 116, 127, 591 A.2d 507, 512 (1991).

Penn National, however, failed to show how Maurer's use of his false identification was a proximate cause of his injuries. To reiterate, Maurer was not the driver of the automobile. Penn National argues that the circumstances show that Maurer purchased alcoholic beverages for Hesselbein. Neither Maurer's nor Hesselbein's nor anyone else's testimony supports this contention. The circumstances would equally support findings that Hesselbein purchased his own alcoholic beverages or that the two other persons at their table purchased alcoholic beverages for Hesselbein.

■ In conclusion, the trial court's instructions tied the "influence of alcohol per se" statutory provisions and the age misrepresentation statute to the principle that violations of statutes may constitute evidence of negligence. This amounted to prejudicial error, requiring a reversal of the judgment below and a new trial.

## IV.

■ There is another issue which is presented by the facts in this case, but which was not raised by the parties either in the Circuit Court or on appeal. That issue concerns the effect of Penn National's consent to Maurer's settlement with Hesselbein and Hesselbein's liability insurer, GEICO. Since the issue was not raised by the parties, it has not been considered in deciding this appeal. Our reversal of the Circuit Court's

judgment is based solely upon the erroneous jury instructions. Nevertheless, resolution of the issue will determine if any new trial should be limited to damages or if it properly can also encompass the tort liability issues of contributory negligence and assumption of the risk. Consequently, pursuant to the last clause of Maryland Rule 8–131(a), we shall decide the effect of Penn National's consent to the settlement with the tortfeasor and GEICO.[3]

Maryland law is clear that an uninsured/underinsured motorist carrier, which consents to the settlement of its insured's tort claim against an uninsured/underinsured tortfeasor, is bound by the settlement. The uninsured/underinsured carrier cannot thereafter contest tort liability and, under some circumstances, the amount of damages. *Nationwide Mutual Ins. v. Webb,* 291 Md. 721, 739–740, 436 A.2d 465, 476 (1981); *Waters v. USF & G,* 328 Md. 700, 717–718, 616 A.2d 884, 892 (1992); *West American v. Popa,* 352 Md. 455, 468, 723 A.2d 1, 7 (1998). Similarly, where the uninsured/underinsured provisions of the policy "do not contain a clause requiring the carrier's consent before the insured can settle with the tortfeasor, the insured is entitled to enter a settlement . . . with the tortfeasor without obtaining the consent" of his or her insurer. "Under these circumstances, the uninsured/underinsured motorist carrier 'is ordinarily bound by the settlement,'" *West American v. Popa, supra,* 352 Md. at 468, 723 A.2d at 7, quoting *Waters v. USF & G, supra,* 328 Md. at 718, 616 A.2d at 892.[4]

---

3. Maryland Rule 8–131(a) provides as follows (emphasis added):

"**Rule 8–131. Scope of review.**

"(a) **Generally.**—The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, *but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.*"

4. Under some circumstances, where the amount of the settlement or settlements, arising out of the same occurrence, would exhaust liability

Thus, in *Nationwide Mutual Ins. v. Webb, supra,* 291 Md. at 739, 436 A.2d at 476, an uninsured carrier, seeking to support the statutory validity of a "consent to sue" clause in a policy's uninsured motorist provisions, argued "that the insured and the uninsured motorist would settle the tort suit, thereby depriving the insurance company of the right to assert defenses." This Court rejected the argument by holding as follows (291 Md. at 739–740, 436 A.2d at 476, emphasis added, footnote omitted):

"[T]he insurer can easily protect itself from being bound by such settlement. The standard uninsured motorist endorsement, and the endorsement in the instant case, requires the insurer's consent to any settlement with the uninsured motorist. Unlike 'consent to sue' clauses, 'consent to settle' clauses are generally upheld, at least to the extent that settlements, consent judgments, releases, covenants not to sue, etc. between insureds and the uninsured motorists *are not binding upon insurers unless the insurers have given their consent. Dancy v. State Farm Mutual Automobile Insurance Co.,* 324 F.Supp. 964 (S.D.Ala.1971); *State Farm Fire and Casualty Company v. Rossini,* 107 Ariz. 561, 490 P.2d 567 (1971); *McInnis v. State Farm Mutual Automobile Ins. Co.,* 208 So.2d 481 (Fla.App.1968); *Tuthill v. State Farm Insurance Company,* 19 Ill.App.3d 491, 311 N.E.2d 770 (1974); *Benson v. Farmers Ins. Co., Inc.,* 227 Kan. 833, 610 P.2d 605 (1980); *Gauthreaux v. Travelers Ins. Co.,* 348 So.2d 737, 739 (La.App.1977); *Aetna Cas. & Sur. Co. v. Poirier,* 371 Mass. 257, 356 N.E.2d 452 (1976); *U.S. Fidelity & Guaranty Co. v. Hillman,* 367 So.2d 914 (Miss.1979); *Kisling v. MFA Mutual Insurance Company, supra,* 399 S.W.2d at 250–251; *Worobec v. State Farm Mut. Auto. Ins. Co.,* 200 Neb. 210, 263 N.W.2d 95 (1978); *Charest v. Union Mutual Ins. Co. of Providence,* 113 N.H. 683, 313 A.2d 407

policy limits, the uninsured/underinsured carrier is by statute given the option to consent or not to consent to the settlement. Under such circumstances, there exists a "consent to settle" clause by statute. Maryland Code (1996, 2006 Repl.Vol.), § 19–511(a) of the Insurance Article.

(1973); *Stanko v. Hartford Acc. & Indem. Co.*, [121 R.I. 331] 397 A.2d 1325 (R.I.1979); *Ford v. State Farm Mut. Auto. Ins. Co.*, 550 S.W.2d 663 (Tex.1977)."

As pointed out in *Nationwide Ins. v. Webb, supra*, 291 Md. at 732–738, 436 A.2d at 473–475, as well as other opinions by this Court, uninsured/underinsured motorist coverage under the statute is "coverage for damages … that (a) the insured is entitled to recover from the" uninsured/underinsured tortfeasor,[5] and, when the insured initially proceeds against the tortfeasor, the insured's entitlement to recover is determined by a judgment or settlement with the tortfeasor. *See, e.g., West American v. Popa, supra*, 352 Md. at 461–468, 723 A.2d at 3–7 (discussion of the "entitled to recover" statutory language, and reiterating that "the uninsured/underinsured motorist carrier 'is ordinarily bound by the settlement' "); *Waters v. USF & G, supra*, 328 Md. at 717–718, 616 A.2d at 892 (what "the uninsured is 'legally entitled to recover' " is "determined by the judgment in or settlement of the tort action"); *Lane v. Nationwide Mut. Ins. Co.*, 321 Md. 165, 176–177, 582 A.2d 501, 506–507 (1990).[6]

Since Penn National consented to the settlement in this case, it should not have been allowed to contest the issues of tort liability. Any new trial shall be limited to the matter of damages.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED AND CASE REMANDED TO THAT COURT FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEE TO PAY COSTS.*

---

**5.** Maryland Code (1996, 2006 Repl.Vol.), § 19–509(c)(1) of the Insurance Article.

**6.** Section 19–511 of the Insurance Article, enacted by Ch. 516 of the Acts of 1995, set forth certain procedures when a settlement offer was made, from an underinsured tortfeasor or the tortfeasor's liability insurer, to the injured claimant with underinsured motorist coverage. Section 19–511 also modified existing law when the underinsured carrier refused to consent to the settlement. Section 19–511, however, did not change the law when the underinsured carrier consented to the settlement.