REPORTED

IN THE COURT OF SPECIAL APPEALS
OF MARYLAND

No. 0511

September Term, 2013

JEANNINE MORSE

v.

ERIE INSURANCE EXCHANGE

Woodward,
Matricciani,
Moylan, Charles E., Jr.
 (Retired, Specially Assigned),

JJ.

Opinion by Moylan, J.
Dissenting Opinion by Woodward, J.

Filed: April 29, 2014

In this uninsured motorist insurance coverage dispute, we must choose between two diverging roads: one requiring compliance with a statutory scheme, the other excusing compliance in favor of a more equitable (or at least less harsh) result. Unlike Robert Frost,[1] we feel constrained to choose the first road, more traveled as it may be. For the parties here – Jeannine Morse, the appellant, and Erie Insurance Exchange, the appellee – that will make all the difference.

## The Acceptance of the Settlement Offer

This case arises out of an April 28, 2007 automobile accident between Jeannine Morse and Paula Smallwood in New Castle, Delaware. The accident itself is not relevant to this appeal, and the parties agree that Smallwood was at fault. Smallwood maintained an automobile insurance policy with Nationwide Insurance Company that provided up to $15,000 in liability coverage. Morse maintained her own uninsured motorist coverage through Erie Insurance Exchange. The uninsured motorist endorsement on Morse's policy contained a consent to settle clause that mirrors the settlement procedures set forth in Md. Code, § 19-511 of the Insurance Article.[2]

---

[1]Robert Frost, "The Road Not Taken."

... Two roads diverged in a wood, and I –
I took the one less traveled by,
And that has made all the difference.

[2]The "Uninsured/Underinsured Motorists Coverage Endorsement" of Morse's Erie policy contained the following clause under the heading "Rights and Duties – General Policy Conditions":

(continued...)

On October 13, 2008, Nationwide offered Morse the full $15,000 policy limit in settlement of her claim against Smallwood. On October 14 or 15, 2008, Morse's then-attorney notified Erie of the settlement offer by telephone. On October 27, 2008, she

---

[2](...continued)
*The following duties are added:*

...

3. "Anyone we protect" must notify "us" by certified mail of any offer to settle a claim for bodily injury or death that, in combination with any other settlement for the same loss, would exhaust the applicable bodily injury or death limits of the liability insurance policy. Within 60 days after receipt of such notice, "we" will send "anyone we protect:"

a. written consent to accept the settlement and to the execution of releases; or

b. written refusal not to accept the settlement offer [sic]. Within 30 days of such notice of refusal, "we" will pay "anyone we protect" the amount of the settlement offer. Payment of the amount of the settlement offer to "anyone we protect" preserves "our" right of recovery from anyone else held responsible. Once this payment is made, "anyone we protect" is required to transfer the right of recovery up to the amount of such payment to "us" and to do nothing to harm this right. Anyone receiving payment from "us" and from someone else for the same accident or loss will reimburse "us" up to the amount of "our" payment.

If "we" fail to meet all of the requirements imposed on "us" under this section, "anyone we protect" may accept a settlement offer and execute releases from [sic] anyone held responsible for the loss without prejudice to any uninsured motorists claim.

(Emphasis supplied).

notified Erie of the offer by mail. Morse's attorney did not send the notice by certified mail, however, and Erie claims it did not receive the notice until December 5 or 6, 2008.

In the meantime, on November 3, 2008, without obtaining Erie's consent to the settlement, Morse accepted Nationwide's offer and signed a release of all claims against Smallwood. Morse's attorney stamped the release with a notation: "Nothing contained in this release waives, limits, or extinguishes any future claims for UM/UIM or PIP benefits." Erie learned that Morse had accepted the settlement on February 4, 2009, but did not receive a copy of the executed release agreement until July 8, 2009.

On November 5, 2009, Erie denied Morse's claim for uninsured motorist benefits. Erie gave three reasons: 1) "Ms. Morse signed the Release agreement and negotiated the Nationwide settlement check prior to sending ERIE the notice as required by [Md. Code, § 19-511 of the Insurance Article]"; 2) "the subject release agreement signed by Ms. Morse was a global release and served to preclude any and all claims, including the subject Underinsured Motorists claim";[3] and 3) Morse "settled her claim against the tortfeasor without ERIE's written consent," in violation of the policy.

### The Jury's Verdict

---

[3]Although the terms "uninsured" and "underinsured" may have distinct meanings in the insurance industry, and both terms are used in the Insurance Article of the Maryland Code, for ease of reference, we shall employ the term "uninsured" to refer to both "uninsured" and "underinsured" motorist insurance.

On June 17, 2011, through her present attorneys, Morse filed suit against Erie in the Circuit Court for Cecil County for breach of the insurance contract. On April 22-23, 2013, the case was tried to a jury on the issues of whether Erie breached the contract by denying Morse's uninsured motorist claim and, if so, the extent of Morse's damages resulting from the automobile accident. Morse moved for judgment on the ground that Erie had failed to show any prejudice resulting from her failure to obtain its consent to settle with Nationwide. The court denied the motion. The court also denied Morse's request for a jury instruction to the effect that her failure to notify Erie of the settlement offer would relieve Erie from its responsibility to provide coverage only if Erie showed actual prejudice.[4] The jury found in favor of Erie. Morse has appealed from that adverse jury verdict.

## The Statutory Milieu

---

[4]Morse requested the following jury instruction, a modified version of MPJI-Civil 14:11, Cooperation by Insured:

> The insurance policy issued to the insured contains a provision requiring the insured to <u>send to her insurer a copy of the other driver's written settlement offer.</u>
>
> The failure of the insured to give this notice frees the insurance company from responsibility for the claimed injury, damage, or loss provided that the failure actually prejudiced the insurance company in investigating or defending against the claim. The insurer insurance company [sic] must establish by a preponderance of the affirmative evidence that it actually was prejudiced by the failure to give the necessary notice.

(Pattern instruction modified as indicated). The court was correct in not giving this instruction because, as we shall explain, it is not a correct statement of the law as it applies to this case.

Our analysis in this case revolves around two sections of the Insurance Article of the Maryland Code. First, § 19-110 prohibits an insurer from disclaiming coverage on a liability insurance policy on the ground that an insured failed to cooperate or to provide "required notice," unless the insurer shows "actual prejudice" resulting therefrom. Section 19-110 provides:

> An insurer may disclaim coverage on a liability insurance policy on the ground that the insured or a person claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer.

Second, § 19-511 creates a procedure that allows an injured insured to settle her claim against a tortfeasor's liability insurer for full policy limits without prejudice to her claim for uninsured motorist benefits. Upon receiving from its insured a settlement offer from a liability insurer for policy limits, the uninsured motorist insurer is afforded sixty days to choose to consent to the settlement (thereby waiving its subrogation rights against the tortfeasor), or to refuse to consent and instead pay its insured the amount of the offer directly (thereby preserving its subrogation rights). If the injured insured has complied with § 19-511 but the uninsured motorist insurer has not timely responded or paid out, the injured insured still may accept the settlement offer without prejudice to her uninsured motorist claim, just as if the uninsured motorist insurer had consented to the settlement. See Kritsings v. State Farm Mut. Auto. Ins. Co., 189 Md. App. 367, 378, 984 A.2d 395, 401 (2009), cert.

<u>denied</u>, 413 Md. 229 (2010).  See also <u>Buckley v. Brethren Mut. Ins. Co.</u>, 207 Md. App. 574, 586-87, 53 A.3d 456, 463 (2012), <u>aff'd</u>, ___ Md. ___, 86 A.3d 665 (2014).[5]

--------------------------------

[5]Section 19-511 provides, in full:

(a) *Settlement offers sent to insurers providing uninsured motorist coverage* – If an injured person receives a written offer from a motor vehicle insurance liability insurer or that insurer's authorized agent to settle a claim for bodily injury or death, and the amount of the settlement offer, in combination with any other settlements arising out of the same occurrence, would exhaust the bodily injury or death limits of the applicable liability insurance policies, bonds, and securities, the injured person shall send by certified mail, to any insurer that provides uninsured motorist coverage for the bodily injury or death, a copy of the liability insurer's written settlement offer.

(b) *Consent or refusal to consent to acceptance of settlement offer* – Within 60 days after receipt of the notice required under subsection (a) of this section, the uninsured motorist insurer shall send to the injured person:

(1) written consent to acceptance of the settlement offer and to the execution of releases; or

(2) written refusal to consent to acceptance of the settlement offer.

(c) *Payment of amount of settlement offer by uninsured motorist insurer* – Within 30 days after a refusal to consent to acceptance of a settlement offer under subsection (b)(2) of this section, the uninsured motorist insurer shall pay to the injured person the amount of the settlement offer.

(d) *Preservation of uninsured motorist insurer's subrogation rights* –

(1) Payment as described in subsection (c) of this section shall preserve the uninsured motorist insurer's subrogation rights against the liability insurer and its insured.

(2) Receipt by the injured person of the payment described in

(continued...)

- 6 -

In construing this statutory scheme, we take our guiding principles from Government

Employees Ins. Co. v. Insurance Comm'r of Md., 332 Md. 124, 630 A.2d 713 (1993):

[T]he primary goal ... is determining the intent of the Legislature when it enacted the subject statute. We begin our search for legislative intent with the words of the statute to be interpreted, considered in light of the context in which the statute appears. Context may include related statutes, pertinent legislative history and "other material that fairly bears on the ... fundamental issue of legislative purpose or goal ..." Where the statute to be construed is a

---

[5](...continued)
subsection (c) of this section shall constitute the assignment, up to the amount of the payment, of any recovery on behalf of the injured person that is subsequently paid from the applicable liability insurance policies, bonds, and securities.

    (e) *Acceptance of settlement offer and execution of releases* – The injured person may accept the liability insurer's settlement offer and execute releases in favor of the liability insurer and its insured without prejudice to any claim the injured person may have against the uninsured motorist insurer:

        (1) on receipt of written consent to acceptance of the settlement offer and to the execution of releases; or

        (2) if the uninsured motorist insurer has not met the requirements of subsection (b) or subsection (c) of this section.

    (f) *Construction of written consent to acceptance of settlement offer* – Written consent by an uninsured motorist insurer to acceptance of a settlement offer under subsection (b)(1) of this section:

        (1) may not be construed to limit the right of the uninsured motorist insurer to raise any issue relating to liability or damages in an action against the uninsured motorist insurer; and

        (2) does not constitute an admission by the uninsured motorist insurer as to any issue raised in an action against the uninsured motorist insurer.

part of a statutory scheme, the legislative intention is not determined from that statute alone, rather it is to be discerned by considering it in light of the statutory scheme. When, in that scheme, two statutes, enacted at different times and not referring to each other, address the same subject, they must be read together, i.e., interpreted with reference to one another, and harmonized, to the extent possible, both with each other and with other provisions of the statutory scheme. Neither statute should be read, however, so as to render the other, or any portion of it, meaningless, surplusage, superfluous or nugatory. In attempting to harmonize them, we presume that, when the Legislature enacted the later of the two statutes, it was aware of the one earlier enacted.

Even though two statutes may require conflicting results with regard to their common subject, they are not thereby necessarily rendered irreconcilable. Where provisions of one of the statutes deal with the common subject generally and those of the other do so more specifically, the statutes may be harmonized by viewing the more specific statute as an exception to the more general one.

Id. at 131-33, 630 A.2d at 717-18.

## Competing Contentions

Morse contends that the court should have granted her motion for judgment on the breach of contract issue because Erie failed to present evidence of actual prejudice resulting from her failure to obtain Erie's consent to settle with Nationwide. She does not contend that she complied with § 19-511. Instead, she asks us to extend the safety net of § 19-110 to require a showing of actual prejudice for disclaimers of coverage based not only on an insured's failure to provide required notice, but also on an insured's failure to obtain consent to settlement. She classifies both as "technical" violations that should not merit the harsh sanction of forfeiture of insurance coverage. She asserts that Erie could not have been

prejudiced by her settlement with Nationwide because the settlement was for the full limit of the only liability insurance policy Smallwood had.

Erie takes a very different view of the statutory provisions. Erie contends that § 19-511 created a mandatory procedure that an insured and insurer must follow in order for the insured to accept a settlement offer from a tortfeasor without prejudice to her claim for uninsured motorist benefits. Erie contends that § 19-110 is strictly limited to denials of liability coverage based on an insured's failure to provide notice or to cooperate, and that it cannot be extended to cover a denial of uninsured motorist coverage based on an insured's failure to obtain consent to settle. Erie views a mere failure to provide notice as something altogether different from Morse's denial of its opportunity to review the offer and decide whether to grant or refuse consent to the settlement.

## In a Nutshell

The issue before us is whether an injured insured's failure to obtain her uninsured motorist insurer's consent to settle with a tortfeasor's liability insurer for policy limits, in violation of her insurance policy and § 19-511, triggers either the § 19-110 or common law prejudice rules. We hold that it does not. The § 19-110 prejudice rule is not a safe harbor that would excuse noncompliance with § 19-511. By its terms, § 19-110 is limited to denials of liability coverage based on an insured's failure to cooperate or failure to provide required notice. Obtaining an uninsured motorist insurer's consent to settle with a tortfeasor's liability

insurer is not equivalent to providing required notice. Maryland's common law prejudice rule is not noticeably broader than § 19-110.

Section 19-511, by contrast, sets forth a specific procedure an injured insured must follow in order to settle with a tortfeasor's liability insurer without prejudice to her uninsured motorist claim. Extending the prejudice rule to also excuse failure to obtain consent to settle would render § 19-511 a nullity. Reading the statutory provisions in harmony with each other, as we must, we hold that an uninsured motorist insurer may disclaim coverage based on its insured's failure to comply with § 19-511, without having to show actual prejudice.

### The Prejudice Rule

Since 1964, as a matter of statute, and since 2005, as a matter of common law, Maryland has followed a "prejudice rule," whereby

> [a]n insurer may not disclaim coverage for either lack of notice or failure to
> cooperate unless it demonstrates that the deficiency has resulted in actual
> prejudice to the insurer.

See Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co., 363 Md. 106, 122, 767 A.2d 831, 840 (2001). In Maryland, it is the insurer who bears the burden of "establish[ing] by a preponderance of affirmative evidence that the delay in giving notice has resulted in actual prejudice to the insurer." See Sherwood Brands, Inc. v. Hartford Accident & Indem. Co., 347 Md. 32, 42, 698 A.2d 1078, 1083 (1997). The rule avoids the "disproportionate" forfeiture that would result "when [a] notice provision is enforced in the absence of prejudice," in which case "the insurer suffers no harm and the insured forfeits the premiums

and loses coverage."  See Prince George's County v. Local Gov't Ins. Trust, 388 Md. 162, 187, 879 A.2d 81, 96 (2005).

Although the majority of states follow some form of prejudice rule today,[6] that was not always the case.  In Watson v. U.S.F. & G. Co., 231 Md. 266, 272, 189 A.2d 625, 627 (1963), the Court of Appeals rejected a prejudice rule as "not in accord with the Maryland decisions, nor with the weight of authority elsewhere in this country."  The General Assembly overruled that decision the next year by enacting the forerunner of present § 19-110, former Article 48A, § 482.  See 1964 Md. Laws Chap. 185.  The statute originally was limited to "motor vehicle liability insurance"; it was extended to all liability insurance in 1966.  See 1966 Md. Laws Chap. 205.  According to the Code Revisor's Note, the current § 19-110, adopted in 1997, is "new language derived without substantive change" from former Article 48A, § 482.  In 2005, the Court of Appeals adopted the prejudice rule as a matter of common law.  Prince George's, 388 Md. at 187, 879 A.2d at 96 ("In accordance with the overwhelming weight of authority of courts across the country and the expression of public policy by the Maryland General Assembly as stated in § 19-110, we adopt the prejudice rule.").  See also Sherwood Brands, Inc. v. Great American Ins. Co., 418 Md. 300, 322 n.18, 13 A.3d 1268, 1282 n.18 (2011).

## A. Section 19-110 Applies Only to Failure to Cooperate and Failure to Provide Notice

[6]As of 2005, thirty-eight states and two territories had adopted a prejudice rule.  See Prince George's, 388 Md. at 183 n.9, 879 A.2d at 94 n.9.

- 11 -

Although Maryland courts have now fully embraced the prejudice rule as articulated in § 19-110, they have uniformly recognized its narrow scope. By its terms, § 19-110 requires an insurer to show actual prejudice only where the insurer disclaims liability coverage as a consequence of its insured's "fail[ure] to cooperate with the insurer" or failure to "giv[e] the insurer required notice."

In Government Employees Ins. Co. v. Harvey, 278 Md. 548, 366 A.2d 13 (1976), the Court of Appeals explained that the General Assembly had already limited the types of failures by an insured that would be protected by the prejudice rule. The version of the statute originally proposed would have required an insurer to show prejudice when it disclaimed liability "for any reason." The version of the statute actually enacted restricted application of the prejudice rule to disclaimers based on failure to cooperate or failure to provide notice.

> As originally introduced before the General Assembly, § 482 provided that an insurance company was required to prove actual prejudice in an action under a motor vehicle liability insurance policy where it filed a disclaimer of insurance for "any reason." The words "any reason" were deleted from the bill prior to final passage. As amended and ultimately enacted, § 482 required insurance companies to prove actual prejudice only where the disclaimer was based on the insured's failure "to cooperate with the insurer or by not giving requisite notice to the insurer."

Id. at 552, 366 A.2d at 16-17 (emphasis supplied).

In Harvey, the injured insured notified her insurer that she had been in an accident nine days after it occurred. The insurer responded by providing the insured with forms necessary to submit proof of claim with regard to personal injury protection ("PIP") benefits.

- 12 -

The insured retained an attorney, and the insurer sent the attorney two reminders that, according to the policy and a statute governing PIP coverage, proof of claim for PIP benefits needed to be submitted within six months of the accident. The insured finally submitted proof of claim seven-and-a-half months after the accident. The insurer denied coverage. The insured brought suit and obtained a judgment in the District Court. The Baltimore City Court affirmed on the ground that the insured's failure to timely submit proof of claim was protected by the statutory prejudice rule.

The Court of Appeals reversed, holding that the prejudice statute did not apply to an insured's failure to provide timely proof of loss, which is "separate and distinct from a notice of accident." The Court explained:

> We think it clear from the history and language of § 482 that its provisions do not apply to insurance disclaimers grounded on the insured's failure to submit proof of loss within the time specified in the policy. That a proof of loss or claim is separate and distinct from a notice of accident is well recognized.

Id. at 553, 366 A.2d at 17 (emphasis supplied). Thus, the insurer was entitled to deny the PIP claim solely because the proof of loss was untimely, without having to show prejudice.

In Phillips Way, Inc. v. American Equity Ins. Co., 143 Md. App. 515, 517, 795 A.2d 216, 217 (2002), this Court dealt with a professional liability insurance policy with a no-action clause providing that the insured could not maintain an action to recover under the policy unless and until the amount of loss was fixed by a final judgment rendered after trial or "by agreement between the parties with the written consent of the [insurer]." Instead of

- 13 -

trying the case to judgment, however, the insured "settled a claim made against it by a third party but did so without the knowledge or consent of its insurer." Id. The insured sued to collect on the insurance policy. The circuit court granted summary judgment in favor of the insurer, and this Court affirmed.

On appeal, we rejected the insured's argument that § 19-110 applied to its failure to obtain consent to settle. We recalled the legislative history of § 19-110, as explained in Harvey. We noted that the General Assembly had "specifically rejected" an approach that would make § 19-110 "applicable to any defense raised by the insurer." Id. at 521, 795 A.2d at 219. We reiterated the Harvey Court's conclusion "[t]hat an insurer must show prejudice only if it raises a failure to cooperate defense or a defense based on lack of notice." Id. We reasoned that extending the prejudice rule to an insured's breach of a no-action clause would "put the nearly impossible burden on the [insurer] of showing collusion [between the insured and the other party to the settlement] or demonstrating, after the fact, the true worth of the settled claim." Id. at 524, 795 A.2d at 221.

In Perini/Tompkins Joint Venture v. ACE American Ins. Co., 738 F.3d 95 (4th Cir. 2013), the United States Court of Appeals for the Fourth Circuit applied Phillips Way to similar facts and reached the same result, concluding that § 19-110 did not apply to an insured's failure to obtain its insurer's consent to settle in violation of a no-action clause.

**B.    "Providing Notice" Is Not Equivalent to "Obtaining Consent to Settle"**

Sensing the outer limits of § 19-110, Morse has attempted to squeeze her situation into one of the statute's two areas of applicability. She argues only that her failure to obtain Erie's consent to settle was a form of failure to provide required notice, not that it was a failure to cooperate. In our view, providing required notice and obtaining consent to settle are simply not the same thing.

Maryland courts have rejected attempts to equate mere notice violations, which trigger the § 19-110 prejudice rule, with other deficiencies by insureds, which do not trigger the § 19-110 prejudice rule. In Harvey, the Court refused to equate an insured's failure to timely submit a "proof of loss or claim" with an insured's failure to provide a "notice of accident."

> That a proof of loss or claim is separate and distinct from a notice of accident is well recognized. A proof of loss enables the insurer to ascertain the nature, extent and character of the loss and to set reserves accordingly. The chief purpose of a proof of loss "is to acquaint the insurance company with certain facts and circumstances relative to the loss, forming a basis for further steps to be taken by the company, ranging from full settlement to absolute repudiation of liability." The insurer's right to a proof of loss, where required by the policy, has been characterized as "an important one to the insurer, and one in which it is to be protected."

278 Md. at 553, 366 A.2d at 17.

In a case that predates § 19-511, Waters v. U.S.F. & G. Co., 328 Md. 700, 616 A.2d 884 (1992), the Court of Appeals noted that a consent to settle clause provides an uninsured motorist insurer with greater protection against undesired settlements than a mere notice clause. The policy in that case contained a notice clause, but not a consent to settle clause.

The insured provided notice of a liability insurer's pending settlement offer, but accepted the offer without obtaining its uninsured motorist insurer's consent. The Court held that the insurer still was bound by the settlement, even though it did not consent, because it had notice of the pending settlement offer and was a party to the action between the insured and the tortfeasor.

> When the uninsured motorist carrier fails to include a consent to settle clause in the uninsured motorist provisions of the policy, and when the carrier, with notice of the tort suit, does not attempt to litigate at trial the underlying tort issues of liability and/or damages, the carrier will ordinarily be bound by a settlement of the tort suit entered into between its insured and the uninsured tortfeasor.

Id. at 719, 616 A.2d at 893 (emphasis supplied). The Court explained that the insurer could have "protect[ed] itself from an allegedly inappropriate settlement between its insured and the uninsured tortfeasor" by inserting a consent to settle clause into its policy, or by intervening in the action and litigating the liability and damages issues, but it chose not to do so. Id. at 718-19, 616 A.2d at 892-93.

In West American Ins. Co. v. Popa, 352 Md. 455, 723 A.2d 1 (1998), another pre-§ 19-511 case, the uninsured motorist policy provided that no judgment against a tortfeasor would be binding upon the uninsured motorist insurer unless the insured had provided "reasonable notice of the pendency of the suit" and the insurer had a "reasonable opportunity" to protect its interests. The policy did not contain a consent to settle clause. After trial against the tortfeasor proceeded to judgment, the insured made a claim for uninsured motorist benefits. The insurer argued that it could not be bound by the judgment

- 16 -

because, at the time, it did not know that an uninsured motorist claim would eventually be made.  The Court rejected that argument and held that the insurer was afforded due process because it had notice of the tort suit and an opportunity to intervene prior to trial.  Id. at 464, 723 A.2d at 5.

The insurer also argued that its insured had no right to recover more on a judgment against one of the parties than it already had recovered, because the insured had filed an "order of satisfaction" as to that judgment.  The Court reiterated

> that when an insured plaintiff gives his uninsured/underinsured motorist carrier timely notice of the tort action, and when the uninsured/underinsured provisions of the insurance policy do not contain a clause requiring the carrier's consent before the insured can settle with the tortfeasor, the insured is entitled to enter a settlement or a consent judgment with the tortfeasor without obtaining the consent of or without further notice to the carrier.

Id. at 468, 723 A.2d at 7 (emphasis supplied).[7]

In Phillips Way, we rejected an insured's attempt to equate its failure to obtain consent to settle with a failure to provide notice.  As we have noted, the insured in that case had violated a no-action clause in a professional liability policy that, under the circumstances, operated as a consent to settle clause.  We explained that, even if the insured had notified its insurer of the pending settlement agreement and had cooperated by giving

---

[7]Although the Popa Court also discussed how other states had handled the situation we face here, where an insured settles with a tortfeasor for policy limits in violation of a consent to settle clause, the Court made clear that it was not presented with that situation and that it "need not ... address [it]."  352 Md. at 468 n.3, 723 A.2d at 7 n.3.  The Court made no mention of the § 19-511 settlement procedure, which existed but was not applicable because the accident at issue occurred before the statute's effective date.

the insurer an opportunity to decide whether to consent, the policy still would have been breached because the insurer had not consented. Thus, the failure to obtain consent was something more than a failure to provide notice or to cooperate and it did not trigger the prejudice rule.

> The appellant's argument, while ingenious, is unpersuasive. First of all, it is not technically true that to obtain American Equity's consent to the settlement, Phillips Way would have had to notify the insurer of the pending settlement – such notification could have been made by UMCP or even by an officious intermeddler. But even if it were technically true that in order for American Equity to give its consent to the intended settlement, Phillips Way would have had to notify and cooperate with its insurer, that fact is irrelevant. If Phillips Way had notified American Equity of the intended settlement and gave the latter its full cooperation, the condition precedent would still have been breached if American Equity failed to give its written consent to that settlement.

143 Md. App. at 520, 795 A.2d at 218 (emphasis supplied).

An insurer's right to consent to settle takes on even greater importance in the context of uninsured motorist insurance. By contrast to a mere right to notice, which does not necessarily trigger anything in terms of the ongoing litigation, an uninsured motorist insurer's statutory right to consent to certain settlements can effectively put the action on hold for up to sixty days while the insurer makes a decision. See § 19-511(b). An insurer's decision whether to grant or refuse consent is not as simple or inconsequential as Morse would have it. The insurer must consider much more than the obvious question whether to waive or to preserve its subrogation rights against the tortfeasor, who may or may not be "judgment-proof." By refusing consent and advancing the amount of the settlement offer

to its insured, the insurer assumes the risk that it could recover less than that amount, or nothing at all, in a subrogation action against the tortfeasor. Under the law that applies to this case, by granting consent, an insurer became bound by the settlement and waived any right to assert the tortfeasor's lack of negligence or its own insured's contributory negligence as a defense to liability on the policy.

By refusing consent to settle, an insurer takes on the risk that it may later recover less than the non-refundable amount it must advance to its insured, or even that it may later recover nothing at all. In <u>Ohio Cas. Ins. Co. v. Chamberlin</u>, 172 Md. App. 229, 914 A.2d 160 (2007), the uninsured motorist insurer refused to consent to a liability insurer's offer to settle for policy limits of $20,000 and, in accordance with § 19-511(c), advanced the $20,000 to its insured. The action against the tortfeasor proceeded to trial, and a jury returned a verdict in favor of the insured for only $5,445. The uninsured motorist insurer then sought repayment from its insured of the $20,000 it had advanced. The circuit court denied that request, and we affirmed. We held

> that when a UIM [carrier] chooses to thwart a proposed settlement between a plaintiff and an alleged tortfeasor by substituting payment of the settlement amount, it bears the risk that a jury might return a verdict in an amount less than the amount advanced or in favor of the defendant(s) and it is not entitled to a refund of any amount paid.

<u>Id.</u> at 240, 914 A.2d at 167.

By granting consent to settle – under the law as it stood at the time that, had Morse complied with § 19-511, Erie would have had to decide whether to grant or refuse consent

– an insurer was precluded from later contesting tort liability. In <u>Maurer v. Pennsylvania Nat. Mut. Cas. Ins. Co.</u>, 404 Md. 60, 945 A.2d 629 (2007), the insured followed the procedures set forth in § 19-511 and obtained his uninsured motorist insurer's consent to settle with the tortfeasor's insurer. After that settlement, the insured sued his insurer on the policy. The court granted partial summary judgment in favor of the insured, ruling that the tortfeasor had been negligent as a matter of law. Nevertheless, the court submitted the case to a jury on the issues of whether the insured had been contributorily negligent or had assumed the risk of his injuries. An affirmative finding on either question would preclude recovery. The jury found contributory negligence and the insured appealed.

The Court of Appeals reversed based on erroneous jury instructions, but went on to address the effect of the uninsured motorist insurer's consent to settle with the tortfeasor. By consenting to a settlement, an uninsured motorist insurer became bound by it. <u>Id.</u> at 74, 945 A.2d at 637 (quoting <u>Nationwide Mut. Ins. Co. v. Webb</u>, 291 Md. 721, 739-40, 436 A.2d 465, 476 (1981) (holding that "consent to sue" clauses in uninsured motorist policies are invalid, but noting that "consent to settle" clauses have generally been upheld)). A consenting insurer was thus precluded from "contest[ing] the issues of tort liability" in the insured's action to recover on the policy. <u>Id.</u> at 75, 945 A.2d at 638. The Court concluded that the insurer in <u>Maurer</u> should not have been allowed to raise the issues of its insured's

contributory negligence or assumption of risk, and the Court directed that "[a]ny new trial shall be limited to the matter of damages." Id.[8]

In 2012, the General Assembly tempered the effect of an insurer's written consent to settle with a tortfeasor. By 2012 Md. Laws Chaps. 268, 269, the legislature added subsection (f) to § 19-511, which provides:

> (f) *Construction of written consent to acceptance of settlement offer –* Written consent by an uninsured motorist insurer to acceptance of a settlement offer under subsection (b)(1) of this section:
>
> (1) may not be construed to limit the right of the uninsured motorist insurer to raise any issue relating to liability or damages in an action against the uninsured motorist insurer; and
>
> (2) does not constitute an admission by the uninsured motorist insurer as to any issue raised in an action against the uninsured motorist insurer.

The legislation provided "[t]hat this Act shall take effect October 1, 2012." Under current law, an insurer will not be bound by a settlement to which it has given written consent. Notwithstanding its consent, an insurer still may raise in its defense "any issue relating to liability or damages." Consent to settlement "does not constitute an admission ... as to any issue raised in an action against the uninsured motorist insurer."

---

[8]As we have noted, the Court had earlier held in Waters, before the enactment of § 19-511, that an uninsured motorist insurer that did not employ a consent to settle clause in its policy would be bound by a settlement to which it did not consent if it had notice of the pending offer and an opportunity to intervene in the tort action. 328 Md. at 718-19, 616 A.2d at 892-93.

- 21 -

Although, today, an uninsured motorist insurer may consent to settlement with a tortfeasor without waiving its right to contest tort liability, that was not true at the time Erie would have decided whether to grant consent to Morse's settlement with Nationwide, had Morse given it the opportunity. By its terms, the 2012 legislation did not take effect until October 1, 2012 – well after Morse's 2007 accident, 2008 settlement, and 2011 filing of suit against Erie. If Morse had complied with § 19-511 and given Erie an opportunity to grant or refuse consent to settle, Erie would have had to consider the more weighty, pre-§ 19-511(f) consequences of its decision.

The 2012 amendment has no effect on this case. Statutes are presumed to apply only prospectively, absent "clear expressions in the statute to the contrary ... particularly ... where the statute adversely affects substantive rights." See State Farm Mut. Auto Ins. Co. v. Hearn, 242 Md. 575, 582, 219 A.2d 820, 824 (1966). See also Keeney v. Allstate Ins. Co., 130 Md. App. 396, 402-07, 746 A.2d 947, 951-53 (2000). The addition of subsection (f) clearly affected substantive rights, as it drastically altered the effect of an insurer's granting consent to settle, vis-à-vis both insurer and insured, and did not merely "alter[] procedural machinery." Hearn, 242 Md. at 582, 219 A.2d at 824. There is absolutely no indication that the General Assembly intended for 2012 Md. Laws Chaps. 268, 269, to apply retrospectively. On the contrary, the legislation specifically provided that it would take effect October 1, 2012. The 2012 change in the law is immaterial to our analysis.

In this case, to be sure, Erie never contested Smallwood's negligence or raised Morse's contributory negligence as an affirmative defense to its liability on the policy. Even if Erie had determined, before Nationwide extended the settlement offer, that Morse had not been at all negligent and Smallwood was completely at fault, that is not material to our analysis. Although this may be evidence that Erie was not prejudiced by Morse's settlement with Nationwide, our task here is only to determine whether, in the abstract, obtaining consent to settle is equivalent to providing required notice. As we have determined that they are not equivalent, the prejudice rule is not implicated and Erie's lack of prejudice in this case is irrelevant.

## C.   The Common Law Prejudice Rule is Unavailing

Morse also invokes Prince George's County v. Local Gov't Ins. Trust, 388 Md. 162, 879 A.2d 81 (2005), which, she claims, created a common law prejudice rule that is broader than § 19-110. In that case, Prince George's County was found liable for the actions of three county police officers that deprived a citizen of his state and federal constitutional rights. The County did not inform its excess liability insurer, the Local Government Insurance Trust, of the incident or the lawsuit until ten days after the jury returned its verdict. The Trust denied coverage on the ground that the County had failed to give notice, as required by the policy, and the County filed suit.

The trial court granted summary judgment in favor of the Trust. This Court affirmed, as did the Court of Appeals. The Court of Appeals held that the County had indeed violated

the notice requirements of the policy, but that § 19-110 did not apply because the Trust did not fit the statutory definition of an "insurer."[9] Nevertheless, the Court held that the Trust was required to show prejudice under the common law. In any event, the Trust was prejudiced as a matter of law by the County's failure to provide notice until after an adverse verdict was rendered, and it was thus entitled to deny coverage.

In holding that the Trust was required to show prejudice under the common law, the Court overruled its earlier rejection of a prejudice rule in Watson v. U.S.F. & G. Co., 231 Md. 266, 189 A.2d 625 (1963). The Court took note of the fact that, although no-prejudice was the majority rule at the time Watson was decided, the majority of states now support a prejudice rule. 388 Md. at 182-83, 879 A.2d at 93. Furthermore, the General Assembly's swift rejection of Watson, by enacting the forerunner of § 19-110, "announced the public policy of this state that an insurer must show prejudice before disclaiming coverage based on the insured's breach of a notice provision." Id. at 187, 879 A.2d at 96. Thus, the Court held:

> An insurer may not disclaim coverage to an insured based on the insured's violation of a notice provision, unless the insurer has been prejudiced by the violation.

Id., 879 A.2d at 96-97 (emphasis supplied).

---

[9]The Court found that the Trust was an insurance pool formed by public entities under Ins. § 19-602, not an "insurer" engaged in the insurance business under Ins. § 1-101. 388 Md. at 180-81, 879 A.2d at 92.

To the extent that a common law prejudice rule even exists, it does not extend to an insured's failure to obtain consent to settle. By its facts, the Prince George's decision extended the § 19-110 prejudice rule to cover entities that do not meet the strict definition of "insurer" contained in Ins. § 1-101, and made clear that the prejudice rule applies to both primary and excess liability insurers. This may support Morse's argument that the prejudice rule applies to uninsured motorist insurance policies, which are not, strictly speaking, liability insurance policies.[10] Nevertheless, nothing in the Prince George's decision remotely suggested that the rule could be extended to anything other than "the insured's violation of a notice provision."

In fact, in a subsequent case, the Court has taken an even more limited view of its Prince George's holding. In Sherwood Brands, Inc. v. Great American Ins. Co., 418 Md. 300, 322 n.18, 13 A.3d 1268, 1282 n.18 (2011), the Court explained:

> In [Prince George's], we – noting § 19-110's embodiment of "the public policy of this state that an insurer must show prejudice before disclaiming coverage based on the insured's breach of a notice provision" – did "adopt the prejudice rule." That is not to say, however, that, prior to [Prince George's], we did not require a showing of prejudice. Section 19-110 requires as much. Rather, we stated merely that, in requiring an insurer to show prejudice when it denies coverage based on a breach of a notice provision, we were not unlike the overwhelming majority of our sister states.

---

[10]In General Accident Ins. Co. v. Scott, 107 Md. App. 603, 614-15, 669 A.2d 773, 779, cert. denied, 342 Md. 115 (1996), we noted that, "[a]rguably, [Article 48A,] § 482 applies to uninsured motorist coverage, because that kind of coverage is a part of the liability insurance policy." Nevertheless, we did not "decide whether § 482 actually applies to uninsured motorist coverage." Id.

- 25 -

(Emphasis supplied).  Whatever common law prejudice rule Maryland may have, it is not noticeably broader than § 19-110.

## The Statutory Settlement Procedure

Our conclusion that Erie's denial of coverage did not trigger the § 19-110 or common law prejudice rules is strengthened by the fact that the procedure for settling with an uninsured tortfeasor is itself a creature of statute.  We cannot apply one statute to excuse Morse's noncompliance with another statute, especially where the two statutes do not overlap or conflict.  As we have explained, § 19-110 requires an insurer to show actual prejudice only where it disclaims liability coverage based on an insured's failure to cooperate or provide required notice.  It does not apply where a disclaimer of coverage is based on an insured's failure to comply with the § 19-511 settlement procedure.

In Harvey, the Court held that the § 19-110 prejudice rule did not apply to an insurer's denial of PIP coverage.  Like uninsured motorist insurance, PIP coverage is mandatory in Maryland, unless affirmatively waived, and is governed by its own statutory provisions.  See Ins. §§ 19-505 et seq.  Consistent with the PIP coverage statute, the insurer had written into its policy a six-month time limit for submitting proof of claim.  The Court held that the insurer was entitled to deny PIP coverage based on its insured's failure to timely submit proof of claim, without having to show prejudice.

In view of the cases, and of the express legislative authorization contained in [Art. 48A, §] 544(a)(1)[11] permitting a time limit for submission of the original proof of loss, we think GEICO had a contractual right to deny liability based on appellee's failure to comply with the condition precedent requiring that proof of claim be made within six months after the accident. This is so, we hold, irrespective of prejudice and notwithstanding the fact that PIP coverage is compulsory.

278 Md. at 554, 366 A.2d at 17 (emphasis supplied). Similarly, an uninsured motorist insurer may deny coverage based on an insured's failure to comply with a statutory settlement procedure, § 19-511, irrespective of prejudice and notwithstanding the fact that uninsured motorist coverage is compulsory.

We do not suggest that § 19-511 removes all uninsured motorist coverage disputes from the ambit of § 19-110. On the contrary, if an uninsured motorist insurer denies coverage based on an insured's failure to provide notice or to cooperate, it will have to show actual prejudice. In General Accident Ins. Co. v. Scott, 107 Md. App. 603, 669 A.2d 773, cert. denied, 342 Md. 115 (1996), this Court affirmed a circuit court's grant of summary judgment in favor of an injured insured whose uninsured motorist insurer denied coverage based on the insured's twenty-nine-month delay in providing notice of the accident. Without

---

[11]Today, Ins. § 19-508(a)(2) provides, in pertinent part:

(2) A policy that contains the coverage described in § 19-505 of this subtitle may:

(i) set a period of not less than 12 months after the date of the motor vehicle accident within which the original claim for benefits must be filed with the insurer[.]

deciding whether the forerunner of § 19-110 actually applied to uninsured motorist coverage, we concluded that "an insurer cannot avoid coverage under an uninsured motorist policy on the grounds of an unreasonably late notice, unless the insurer proves that it suffered 'actual prejudice.'" Id. at 615, 669 A.2d at 779.[12]

Section 19-511 exists primarily for the benefit of an injured insured. It was first enacted in 1995 as Article 48A, § 542(b). See 1995 Md. Laws Chap. 516. It was conceived, in part, as a short cut allowing an injured insured to obtain at least some compensation for her injury without having to wait for a global settlement involving both the tortfeasor's liability insurer and her own uninsured motorist insurer. See Kritsings v. State Farm Mut. Auto Ins. Co., 189 Md. App. 367, 378-79, 984 A.2d 395, 401-02 (2009), cert. denied, 413 Md. 229 (2010). It is a carefully brokered legislative solution that "sets forth a settlement procedure to be followed by claimants." See Brethren Mut. Ins. Co. v. Buckley, ___ Md. ___, 86 A.3d 665, 674 (2014).

In Keeney v. Allstate Ins. Co., 130 Md. App. 396, 403-04, 746 A.2d 947, 951 (2000), we explained the situation before § 19-511, when liability insurers' unwillingness to settle

---

[12] Section 19-511 did not apply in the Scott case because the action was commenced well before the statute took effect in 1995. Even if it had applied, however, § 19-511 would not have been implicated because the case was argued and decided based on the insured's failure to provide notice, not the insured's failure to obtain consent to settle.

without a release was pitted against uninsured motorist insurers' unwillingness to grant a release and waive subrogation.[13]  We recounted the legislative purpose behind the bill:

> Senate Bill 253 [of 1995], which was to become Article 48A, Section 542(b), was sponsored by Senator Vernon Boozer of Baltimore County. The purpose of Senator Boozer's bill, according to the "Senate floor report," was to provide a
>
> > remedy to a problem that has existed in Maryland's tort system for some time.  Currently, an injured person who makes a claim against a liability carrier for limits available under the liability policy is frequently not allowed by their uninsured/ underinsured motorist carrier to give the liability carrier a full release of their claim.  Therefore, if the injured person wishes to make an additional claim for their injuries against their underinsured motorist coverage, they get caught in a situation where the liability carrier will not give them the limits of the at-fault party's policy without a release and the uninsured/underinsured motorist carrier will not allow them to give a release to the liability carrier.  As a result, they are unable to recover funds from either carrier.  This dilemma can cause a lengthy delay in settlement.
> >
> > Senate Bill 253 would eliminate this dilemma by requiring the uninsured/underinsured motorist carrier to: (1) allow their injured insured to settle with the liability carrier and provide a release; or (2) pay their injured insured themselves to fully maintain their subrogation rights against the liable party. Therefore, the insured party gets his money more quickly and

---

[13]Even after the enactment of § 19-511, some insurers (including Erie in its initial denial of Morse's claim) have argued that an insured's general release of a tortfeasor can also release the uninsured motorist insurer's obligation to provide coverage.  The Court of Appeals rejected that argument in Brethren Mut. Ins. Co. v. Buckley, ___ Md. ___, 86 A.3d 665 (2014), holding that an insured may execute a general release, not explicitly limited to the tortfeasor and the tortfeasor's liability insurer, without prejudice to her claim for uninsured motorist benefits.

the uninsured/underinsured motorist carrier would have "up front" the liability settlement.

The summary of the bill provided in the Senate floor report was terse, viz:

SENATE BILL 253 ESTABLISHES A SETTLEMENT PROCEDURE TO BE FOLLOWED WHEN A CLAIMANT IS INJURED BY A PARTY WHOSE LIABILITY INSURANCE LIMIT IS LESS THAN THE CLAIMANT'S UNINSURED MOTORIST LIMITS.

Id. at 401-02, 746 A.2d at 950.

In exchange for allowing injured insureds to obtain some compensation earlier on in the process, without prejudice to their remaining claims for uninsured motorist benefits, § 19-511(b) grants an uninsured motorist carrier the right to consent to settlement and a sixty-day period to make that decision. This is true even if the policy does not contain a consent to settle clause. Section 19-511 effectively writes into all uninsured motorist policies a consent to settle clause that applies where the settlement offer would exhaust liability policy limits. See Maurer, 404 Md. at 73 n.4, 945 A.2d at 637 n.4 ("Under some circumstances, where the amount of the settlement or settlements, arising out of the same occurrence, would exhaust liability policy limits, the uninsured/underinsured carrier is by statute given the option to consent or not to consent to the settlement. Under such circumstances, there exists a 'consent to settle' clause by statute.").

If an injured insured follows the settlement procedures of § 19-511, she cannot lose. If the uninsured motorist insurer grants consent to the settlement, she will obtain prompt

compensation from the tortfeasor's liability insurer. If the uninsured motorist insurer refuses consent to the settlement, it must promptly remit to her the same compensation, as an advance against any future recovery. If the uninsured motorist insurer does not respond within the statutorily established time limit, she may accept the liability insurer's offer as if her insurer had consented. Upon settling with a liability insurer, pursuant to § 19-511(e), or accepting equivalent payment from her uninsured motorist insurer, pursuant to § 19-511(c), the injured insured no longer bears any risk that her claim will later be found to be worth less than the limit of the tortfeasor's liability policy. Once she accepts payment, the money is hers to keep.[14] In short, an injured insured cannot prejudice her claim for uninsured motorist benefits by following § 19-511.

In this case, Morse made no attempt to comply with § 19-511. Section 19-511 was triggered when Nationwide extended an offer to settle for the full limit of the only liability policy Smallwood had. Instead of sending Erie a copy of Nationwide's offer by certified mail, as required by § 19-511(a), Morse's previous attorney first notified Erie by telephone and later by non-certified mail. Instead of giving Erie sixty days to decide whether to grant or refuse consent to the settlement, as required by § 19-511(b), Morse accepted Nationwide's offer and signed a release, twenty-one days after the offer was extended, nineteen or twenty

---

[14] Although the amount of payment the insured receives will be set off against any later higher recovery against a responsible party or the uninsured motorist insurer, see §§ 19-509(g), 19-511(d)(2), the insured will not have to return any money should subsequent litigation result in a recovery lower than the initial payment, or even no recovery at all. See Ohio Cas. Ins. Co. v. Chamberlin, 172 Md. App. 229, 914 A.2d 160 (2007).

days after her attorney notified Erie by telephone, seven days after her attorney sent notice by non-certified mail, and thirty-two or thirty-three days before Erie actually received the written offer.

We are mindful that "the purpose of uninsured motorist statutes is 'that each insured under such coverage have available the full statutory minimum to exactly the same extent as would have been available had the tortfeasor complied with the minimum requirements of the financial responsibility law,'" see, e.g., Nationwide Mut. Ins. Co. v. Webb, 291 Md. 721, 737, 436 A.2d 465, 474 (1981), as well as "the remedial nature of the statutory plan, which dictates a liberal construction in order to effectuate its purpose of assuring recovery for innocent victims of motor vehicle accidents," see, e.g., State Farm Mut. Auto. Ins. Co. v. Maryland Auto. Ins. Fund, 277 Md. 602, 605, 356 A.2d 560, 562 (1976). Nevertheless, even a liberal construction of a remedial statute cannot excuse total noncompliance.

In Buckley v. Brethren Mutu. Ins. Co., 207 Md. App. 574, 53 A.3d 456 (2012), this Court held that an insured's general release, given in exchange for settlement with a tortfeasor's liability insurer, that released the tortfeasor "and all other persons, firms or corporations," did not also release the insured's uninsured motorist carrier from providing benefits. We explained that to hold otherwise would be contrary to the text, spirit, and purpose of § 19-511. Nevertheless, we remanded for further factfinding with regard to whether the insurer had consented to the settlement with the tortfeasor. The answer to that question would determine whether the insurer could contest tort liability at trial or be limited

to a trial on damages only. The Court of Appeals affirmed our decision in all respects, though it did not reach the question whether the insurer had actually consented to the settlement. Brethren Mut. Ins. Co. v. Buckley, ___ Md. ___, 86 A.3d 665 (2014). Nothing in either opinion casts any doubt on an insured's obligation to comply with § 19-511.

We are not moved by Morse's assertion that Erie could not have been prejudiced by her settlement with Nationwide because the settlement was for the full limits of the only liability insurance policy Smallwood had. As we have explained, no prejudice rule was triggered in this case and Erie's lack of prejudice is irrelevant. We note, however, that, if we were to apply a prejudice rule as Morse suggests, such a lack of prejudice would almost always excuse noncompliance with § 19-511, because § 19-511 only applies where "the amount of the settlement offer, in combination with any other settlements arising out of the same occurrence, would exhaust the bodily injury or death limits of the applicable liability insurance policies, bonds, and securities." § 19-511(a). We cannot apply a strained construction of the § 19-110 prejudice rule to eviscerate § 19-511, a carefully brokered legislative compromise that already is stacked in favor of an injured insured who complies with it.

## Out-of-State Cases are Not Persuasive Here

Morse presents us with decisions of twenty-eight states which, she claims, apply a prejudice rule to a denial of uninsured motorist coverage based on violation of a consent to

- 33 -

settle clause.[15]  Those decisions are easily distinguished from the case at bar.  Only two of

those states, Nebraska[16] and North Dakota,[17] have statutory provisions concerning consent

to settle with a tortfeasor.  All the rest have dealt with the matter by common law.  Unlike

---

[15]She also acknowledges six states that have rejected a prejudice rule.  See Downey v. Travelers Prop. Cas. Ins. Co., 74 So. 3d 952 (Ala. 2011); Dalke v. Allstate Ins. Co., 935 P.2d 1067 (Kan. Ct. App. 1997); Lee v. Auto-Owners Ins. Co., 554 N.W.2d 610 (Mich. Ct. App. 1996); Stevens v. Merchants Mut. Ins. Co., 599 A.2d 490 (N.H. 1991); Fraioli v. Metropolitan Prop. & Cas. Ins. Co., 748 A.2d 273 (R.I. 2000); Osborne v. National Union Fire Ins. Co., 465 S.E. 2d 835 (Va. 1996).  Dalke involved an uninsured motorist settlement statute very similar to Maryland's § 19-511, Kan. Stat. § 40-284(f), which does not contain a prejudice provision.  The court declined to imply one.

[16]Nebraska law provides that uninsured motorist coverage "shall not apply" where

the insured or his or her representative makes, without the written consent of the insurer, any settlement with or obtains any judgment against any person who may be legally liable for any injuries if such settlement adversely affects the rights of the insurer, except that this subdivision shall not apply to underinsured motorist coverage when the insured has given notice to the insurer, in compliance with subsection (2) of section 44-6412, and the insurer has failed to make the required payment to protect its right of subrogation[.]

Neb. Rev. Stat. § 44-6413(1)(a) (emphasis supplied).

[17]North Dakota law provides that uninsured motorist coverage "do[es] not apply" where

the insured, without the written consent of the insurer, shall make any agreement or settlement with any person who may be legally liable therefor, if such agreement adversely affects the rights of the insurer.  The insurer is not bound by any agreement or settlement without its prior knowledge and consent. This limitation does not apply to underinsured motorist coverage when the insured has advised the insurer, in compliance with subsection 2 of section 26.1-40-15.5, and the insurer has failed to advance the required payment to protect its right of reimbursement and subrogation[.]

N.D. Cent. Code § 26.1-40-15.6(7) (emphasis supplied).

Maryland's § 19-511, the Nebraska and North Dakota statutes explicitly contain a prejudice provision.

In Sherwood Brands, Inc. v. Great American Ins. Co., 418 Md. 300, 327-28, 13 A.3d 1268, 1285 (2011), the Court of Appeals cautioned against "squeez[ing] a square peg – that is, Maryland's notice-prejudice statute, as embodied in § 19-110, and our jurisprudence – into a round hole – that is, the notice-prejudice jurisprudence of other states and jurisdictions." The Court noted that, "[o]f the more than three-dozen states adopting a notice-prejudice rule, it appears that only two did so legislatively, as Maryland has." Id. That assessment applies equally to the cases Morse has cited here. We may not read a prejudice rule into § 19-511 on the authority that other state legislatures have included one in their statutes, or that other state courts have included one in their judicially-crafted remedies, when the Maryland General Assembly has not seen fit to do so.

## Conclusion

Morse argues that our result would be inequitable. Erie, to be sure, made no showing at all that it was prejudiced by Morse's failure to obtain its consent to settle with Nationwide. The result Morse feels is harsh could have been easily avoided by complying with the straightforward settlement procedure the General Assembly provided in § 19-511. We will not nullify a finely tuned and completely valid statutory procedure simply to excuse Morse's noncompliance in this particular case. As Morse's noncompliance did not trigger a prejudice

rule, Erie was entitled to disclaim liability on the basis of that noncompliance, with or without prejudice.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0511

September Term, 2013

JEANNINE MORSE

v.

ERIE INSURANCE EXCHANGE

Woodward,
Matricciani,
Moylan, Charles E., Jr.
    (Retired, Specially Assigned),

JJ.

Dissenting Opinion by Woodward, J.

Filed: April 29, 2014

I respectfully dissent.

At the outset, it is important to note that under the facts of this case, Erie does not claim, nor is there anything in the record to support a claim, that Erie was actually prejudiced by Morse's failure to obtain Erie's written consent prior to settling her claim against the tortfeasor for the limits of the tortfeasor's liability policy. Thus, if the consent to settle requirement of § 19-511 is enforced in the absence of actual prejudice, as Erie urges and the majority holds, "the insurer [Erie] suffers no harm and the insured [Morse] forfeits the premiums and loses coverage." *Prince George's Cnty. v. Local Gov't Ins. Trust*, 388 Md. 162, 187 (2005). Notwithstanding the majority's assertion that Erie's lack of actual prejudice is "irrelevant," I believe that such lack of actual prejudice is very relevant to a proper construction of § 19-511.

In *Town of Oxford v. Koste*, 204 Md. App. 578 (2012), *aff'd*, 431 Md. 14 (2013), this Court set forth the principles that guide the construction of a statute:

> **This case presents an issue of statutory construction, like many, resolvable on the basis of judicial consideration of three general factors: 1) text; 2) purpose; and 3) consequences.** Text is the plain language of the relevant provision, typically given its ordinary meaning, viewed in context, considered in light of the whole statute, and generally evaluated for ambiguity. Legislative purpose, either apparent from the text or gathered from external sources, often informs, if not controls, our reading of the statute. An examination of interpretive consequences, either as a comparison of the results of each proffered construction, or as a principle of avoidance of an absurd or unreasonable reading, grounds the court's interpretation in reality.

*Id.* at 585-86 (emphasis added) (citations omitted). When the text is ambiguous, we must look beyond the statute's plain language to determine legislative intent:

"While the language of the statute is the primary source for determining legislative intention, the plain meaning rule of construction is not absolute; rather, **the statute must be construed reasonably with reference to the purpose, aim, or policy of the enacting body. The Court will look at the larger context, including the legislative purpose, within which statutory language appears. Construction of a statute which is unreasonable, illogical, unjust, or inconsistent with common sense should be avoided.**"

*Consol. Constr. Servs., Inc. v. Simpson*, 372 Md. 434, 457 (2002) (emphasis added) (quoting *Tracey v. Tracey*, 328 Md. 380, 387 (1992)). The Court of Appeals has emphasized the importance of legislative purpose, stating that "[t]he cardinal rule [of statutory interpretation] is to ascertain and effectuate legislative intent." *Id.* at 456 (alterations in original) (internal quotation marks omitted).

Regarding the text of § 19-511, in *Buckley v. Brethren Mutual Insurance Co.*, 207 Md. App. 574 (2012), *aff'd*, ___ Md. ___, No. 10, September Term 2013 (filed March 4, 2014), we summarized the procedure to be followed by the insured and the uninsured motorist carrier ("UM carrier") when the liability insurer of the alleged tortfeasor offers the policy limits to the injured person. We stated:

> Pursuant to § 19-511(a), when the liability insurer of the alleged tortfeasor offers its policy limits to the injured person, the injured insured must send a copy of the offer by certified letter to the injured insured's UM carrier. § 19-511(a). Within 60 days after receipt of the notice, the UM carrier "shall send to the injured person: (1) written consent to acceptance of the settlement offer and to the execution of releases; or (2) written refusal to consent to acceptance of the settlement offer." § 19-511(b). If the UM carrier refuses to consent to acceptance of the settlement offer, the UM carrier must pay the amount of the settlement offer to the injured person within 30 days

- 2 -

following the refusal. If the UM insurer consents to the settlement offer, or otherwise fails to respond to the settlement offer as required by subsections (b) and (c) of § 19-511, then the injured insured may accept the settlement offer from the liability insurer and execute a release "in favor of the liability insurer and its insured without prejudice to any claim the injured person may have against the uninsured motorist insurer." § 19-511(e).

*Id.* at 586-87 (footnote omitted).

There is no language in § 19-511 that sets forth the consequences of an insured's failure to follow the statute's procedure prior to accepting the tortfeasor's liability policy limits. According to the majority, the consequence of such failure is that the UM carrier may deny coverage regardless of whether it suffered actual prejudice. Morse, on the other hand, construes § 19-511 to require actual prejudice to the UM carrier before it can deny coverage. Given the absence of statutory language, § 19-511 is ambiguous, and the question thus presented is which construction is consistent with the purpose and policy of § 19-511, and how do the results of each construction compare with each other.[1] *See Simpson*, 372 Md. at 457 (holding that ambiguity in a statute requires the court to consider the purpose and policy behind the statute and avoid unjust results); *Koste*, 204 Md. App. at 586 (noting that statutory interpretation should be grounded in a consideration of the interpretive consequences of the statutes's proffered constructions).

---

[1] Although Morse relies on § 19-110 to arrive at her construction of § 19-511, I do not believe that such reliance is necessary to come to the same conclusion.

In *Buckley*, this Court articulated the purpose and policy of the uninsured motorist statute, as well as the underlying reasons for enacting § 19-511. We said:

> **The purpose of the uninsured motorist statute is to provide minimum protection for individuals injured by uninsured motorists and should be liberally construed to ensure that innocent victims of motor vehicle collisions are compensated for their injuries.** Consistent with the public policy of affording minimal protection for innocent victims, an insured can purchase a higher amount of uninsured motorist insurance which will become available when the insured's uninsured motorist coverage, as well as his damages, exceed the liability coverage of the tortfeasor. The effect [i]s to provide an injured insured with compensation equal to that which would have been available had the tortfeasor carried liability insurance in an amount equal to the amount of the injured insured's UM coverage.

207 Md. App. at 589 (alteration in original) (emphasis added) (citations and internal quotation marks omitted). Similarly, Maryland has a "strong public policy favoring compensation of those injured by UM drivers." *Id.* at 591.

The primary reason for enacting § 19-511 was to eliminate the potential lengthy delay caused by "'a situation where the liability carrier w[ould] not give [the injured persons] the limits of the at-fault party's policy without a release and the [UM] carrier w[ould] not allow them to give a release to the liability carrier.'" *Id.* at 590 (first and fourth alterations in original) (quoting *Keeney v. Allstate Ins. Co.*, 130 Md. App. 396, 401 (2000)). Moreover, § 19-511 sought to strike a balance between the right of the insured to a speedy recovery of the liability policy limits and the protection of the UM carrier's subrogation rights.

When the constructions of § 19-511 advanced by the majority and Morse are considered in the context of the purpose and policy of Maryland's uninsured motorist statute and the reasons underlying § 19-511, the result clearly favors Morse's construction. Morse's construction would further the public policy of affording protection for innocent victims by allowing recovery of uninsured motorist compensation unless the UM carrier can show actual prejudice occasioned by the insured's failure to comply with the procedural requirements of § 19-511. Where there is no actual prejudice, an insured who paid for uninsured motorist coverage equal to his or her liability coverage would receive what the statute intended: "'[C]ompensation equal to that which would have been available had the tortfeasor carried liability insurance in an amount equal to the amount of the injured insured's UM coverage.'" *Id.* at 589 (quoting *Kritsings v. State Farm Mut. Auto. Ins. Co.*, 189 Md. App. 367, 375 (2009)). In addition, the balance between the insured's right to speedy recovery and the protection of the UM carrier's subrogation rights would be maintained by Morse's construction, because the UM carrier would still be able to deny coverage where its subrogation rights were actually prejudiced.

A comparison of the results of the different constructions of § 19-511 also support Morse's construction. Adoption of the majority's view results, in effect, in a windfall to the UM carrier—the UM carrier is allowed to keep the premiums paid for uninsured motorist coverage while avoiding its obligation to pay an otherwise valid claim, where the actions of the insured did not increase the risk inherent with such coverage or prejudice any subrogation

rights of the UM carrier. Morse's construction would protect a UM carrier from any real adverse impact on its subrogation rights while allowing the recovery of compensation under uninsured motorist coverage that was bought and paid for by the insured.

Finally, the views expressed in this dissent are consistent with those of Andrew Janquitto, who wrote in his treatise, *Maryland Motor Vehicle Insurance*:

> **The issue of whether an unauthorized settlement by a claimant can relieve the claimant's insurer of its obligation to pay UM benefits is a difficult one** . . . . A short answer is that the 1995 amendment that created what is now Section 19-511 provides a mandatory procedure that must be followed and, if it is not followed, the UM insurer is relieved of its obligation to pay UM benefits. This short answer may not be correct. Of note, Section 19-511 does not indicate that the failure to abide by its provisions relieves the UM insurer of its contractual obligation to pay. Hence, if the UM insurer can escape its obligation, it must do so by relying on a contractual consent-to-settle clause.[2] But using a breach of a consent-to-settle clause to avoid the obligation to pay UM benefits is also problematic. Not only is there no provision in the UM Statute that creates an insurer's subrogation right, there is no provision that states that a claimant's unauthorized release of a tortfeasor is grounds for the insurer to escape paying UM benefits. **Even assuming an insurer could escape its contractual and statutory obligations by enforcing a consent-to-settle provision, it should be able to do so only if that is an equitable result.** Subrogation, even when it [ ] arises out of a contract or a statute, is equitable in nature. . . . **[A] court must seek to strike a balance between the claimant's right to compensation and the insurer's right to subrogation.** Certainly, a mere loss of a theoretical right of subrogation rights should not cause the loss of an injured claimant's right of recovery, for such a holding would not be an equitable one. An insurer, simply put, must show that there was a realistic likelihood that it would have recovered

---

[2] In the instant case, Erie relied upon its contractual consent-to-settle clause to deny Morse her UM claim.

had it exercised the subrogation rights. **In other words, an insurer must show that it has been actually or materially prejudiced by the release of the tortfeasor.**

Andrew Janquitto, *Maryland Motor Vehicle Insurance* § 8.12(B), at 471 (3d ed. 2011) (footnote omitted).

For the foregoing reasons, I would reverse the judgment of the circuit court.